## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Clean Label Project Foundation,
      280 E. 1st Avenue, #873
      Broomfield, Colorado 80038,

            Plaintiff,

   v.

New Chapter, Inc.,
      Corporation Trust Center
      1209 Orange Street
      Wilmington, Delaware 19801

           Defendant.

Case No. _____

## NOTICE OF REMOVAL

Defendant New Chapter, Inc. ("New Chapter") hereby removes this action filed by Plaintiff Clean Label Project Foundation ("Plaintiff") from the Superior Court of the District of Columbia to the United States District Court for the District of Columbia.

This Court has original jurisdiction over this lawsuit, and removal is thus proper, for three reasons. *See* 28 U.S.C. §§ 1331, 1332, 1441, 1446, 1453. First, this Court has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because Plaintiff's claims fit within the statutory definition of a "class action" in which the proposed class exceeds 100 members, at least one plaintiff is diverse from the defendant, and the amount in controversy exceeds $5 million. Second, this Court has traditional diversity jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity between the two parties to this lawsuit and the relief sought exceeds $75,000. Third, this Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff's Complaint necessarily wades into actually disputed and substantial federal issues, including

1

whether the products at issue are adulterated within the meaning of federal law and regarding the federal government's regulation of the selling, marketing, and labeling of prenatal vitamins. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). A suit of this nature should be heard by a federal court.

## TIMELINESS OF REMOVAL

1.      Plaintiff filed this action in the Superior Court of the District of Columbia on August 26, 2020. *See* Exhibit 1, Compl. Plaintiff served the Complaint on October 22, 2020. *See* Exhibit 2, Proof of Service. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the remainder of the Superior Court case file (including all documents other than the Complaint and Proof of Service) is attached as Exhibit 3.

2.      This Notice of Removal is timely because it is filed within 30 days of service. *See* 28 U.S.C. § 1446(b).

## NATURE OF ACTION[1]

3.      Plaintiff alleges that it is a non-profit organization based in Colorado that tests consumer goods to "identify the best and worst labeled products and publish[] top and bottom performers on its website." Compl. ¶ 37. Plaintiff's asserted goal is to "reduc[e] contamination across all consumer-packaged goods." *Id.* ¶ 38.

4.      New Chapter is a Delaware corporation headquartered in Vermont. Compl. ¶ 41. New Chapter develops, manufactures, and markets a wide range of vitamins and supplements, including prenatal vitamins for expectant mothers.

---

[1] For purposes of this Notice of Removal, New Chapter has calculated the amount-in-controversy assuming Plaintiff's allegations are true and warrant relief. New Chapter maintains, however, that Plaintiff's allegations are untrue and its claims are meritless. Nothing in this Notice should be interpreted as a waiver or relinquishment of any defense or objection to Plaintiff's Complaint.

5.      The Complaint alleges that three of New Chapter's prenatal vitamin products—New Chapter Perfect Prenatal Multivitamin (48ct), New Chapter Perfect Prenatal Multivitamin (180ct),[2] and New Chapter Wholemega for Moms (180ct) (collectively, the "Prenatal Vitamins")—are "adulterated with respect to quantifiable amounts of lead and cadmium" and "were also found to contain detectable amounts of pesticides," Compl. at 1, "all of which are harmful if exposed to both mothers and babies during the prenatal process," *id.* ¶¶ 82, 122. Plaintiff asserts that New Chapter violated the D.C. Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3904 *et seq.*, because the Prenatal Vitamins have allegedly been deceptively labeled, marketed, and sold.  *See* Compl. ¶¶ 114–121.  Plaintiff also asserts that New Chapter has sold products that are "adulterated" because they are "injurious to health."  *Id.* ¶ 122.

6.      Plaintiff asserts that it is a "public interest organization" and purports to bring this action under D.C. Code § 28-3905(k)(1)(D) "'on behalf of the interests of a consumer or class of consumers.'"  Compl. ¶¶ 126–31.

7.      Plaintiff seeks a declaration that New Chapter's conduct violated the CPPA; an injunction prohibiting New Chapter from violating the CPPA; an order requiring New Chapter to provide corrective advertising; costs and fees, including attorneys' fees and expert fees; punitive damages; and any other relief the Court deems just and proper.  *See* Compl. at 25–26 (Prayer for Relief).

## THIS COURT HAS JURISDICTION UNDER CAFA

8.      Removal is proper under the Class Action Fairness Act, 28 U.S.C. § 1332(d). CAFA provides that federal courts have original jurisdiction over (i) a "class action" in which (ii)

---

[2] Plaintiff identifies a "180ct" New Chapter Perfect Prenatal Multivitamin product as a subject of its Complaint.  *See* Compl. ¶ 22.  New Chapter does not, however, manufacture, market, or sell a 180-count variety of the Perfect Prenatal Multivitamin.

any plaintiff is diverse from any defendant, (iii) at least 100 class members are represented, and (iv) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs." 28 U.S.C. § 1332(d).  Under 28 U.S.C. § 1441(a), any such action may be removed to the federal district court for the district and division embracing the place where the action is pending. *See also Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013) (explaining that "CAFA's primary objective" is to "ensur[e] 'Federal court consideration of interstate cases of national importance'" (quoting § 2(b)(2), 119 Stat. 5)); S. Rep. No. 109–14, at 43 (2005) (CAFA's "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

### Plaintiff's Claims Qualify as a Class Action Under CAFA

9.      CAFA defines "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B). CAFA's legislative history makes clear that "the definition of 'class action' is to be interpreted liberally.  Its application should not be confined solely to lawsuits that are labeled 'class actions.' . . .  Generally speaking, lawsuits that resemble a purported class action should be considered class actions for the purpose of applying [CAFA]."  S. Rep. No. 109–14, at 35 (2005).

10.     Consistent with Congress's overall objectives, district courts "look beyond the face of a complaint when determining whether federal jurisdiction exists over a matter that appears to be a class action in all but name." *W. Virginia ex rel. McGraw v. Comcast Corp.*, 705 F. Supp. 2d 441, 452 (E.D. Pa. 2010); *see also Williams v. Emp'rs Mutual Casualty Co.*, 845 F.3d 891, 901 (8th Cir. 2017) ("[A]llowing class-action plaintiffs to avoid federal jurisdiction simply by omitting explicit reference to the class-action rule they intend to proceed under would promote the kind of

procedural gaming CAFA was enacted to prevent."); *Badeaux v. Goodell*, 358 F. Supp. 3d 562, 568 (E.D. La. 2019) ("A lawsuit resembling a class action will not escape CAFA jurisdiction simply because it omits the words 'class action' or does not include the state rule or statute under which it proceeds as a class action.").

11.     A complaint's substantive allegations—not the "use of magic words," *Williams*, 845 F.3d at 901—determine whether a lawsuit is a class action for CAFA purposes.  *See Addison Automatics, Inc. v. Hartford Cas. Ins. Co.*, 731 F.3d 740, 742 (7th Cir. 2013) (finding an action was properly removed under CAFA where it was "in substance a class action," "notwithstanding [the plaintiff's] artificial attempt to disguise the true nature of the suit").

12.     The CPPA is a "similar State statute" that "authorizes" class actions to be brought by one or more representatives.  It provides that "public interest organization[s] may, on behalf of the interests of a consumer *or a class of consumers*, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District if the consumer *or class* could bring an action under subparagraph (A) of this paragraph for relief from such use by such person of such trade practice."  D.C. Code § 28-3905(k)(1)(D)(i) (emphasis added).  The CPPA's plain terms thus establish that claims brought by a nonprofit organization seeking to represent the interests of a group of consumers are "class" claims under CAFA.

13.     Additionally, the D.C. Court of Appeals and D.C. trial courts recognize that Plaintiff's claims under the CPPA must satisfy the class action requirements of Superior Court Rule of Civil Procedure 23.  *See Rotunda v. Marriott Intl, Inc.*, 123 A.3d 980, 986 (D.C. 2015) (establishing that CPPA claims must meet the requirements of Superior Court Civil Rule 23); *cf. Organic Consumers Ass'n v. Gen. Mills*, 2017 WL 2901210, at *5 (D.C. Sup. Ct. 2017) (recognizing that "[i]t may be, under *Rotunda's* interpretation of the CPPA, that Plaintiffs will

5

have to seek to certify a class under Rule 23 to represent the interests of" "the 'general public' or 'class of consumers'").

14.    Although not labeled as such, this action is "in substance a class action," removable under CAFA.  *Addison*, 731 F.3d at 742.  The Complaint repeatedly alleges that it is asserting a private cause of action under D.C. Code § 28-3905(k)(1)(D)(i), which only permits claims to be brought on behalf of either "'a consumer or *class* of consumers.'"  *See* Compl. ¶¶ 31, 43–44, 111, 126–30.  Because any claim under D.C. Code § 28-3905(k)(1)(D)(i) must seek relief under Superior Court Civil Rule 23, which is similar to Fed. R. Civ. P. 23, the Complaint satisfies CAFA's requirements.  *See Rotunda*, 123 A.3d at 986; *cf. Organic Consumers Ass'n*, 2017 WL 2901210, at *5.

15.    Plaintiff's requested monetary remedies—specifically, punitive damages—also establish that this matter qualifies as a class action under CAFA.  *See* Compl. at 25–26 (Prayer for Relief).  Because this case concerns a request for money damages, Plaintiff must satisfy the requirements of D.C. Superior Court Rule 23, making this case removable under CAFA.  *See Rotunda*, 123 A.3d at 986.

### CAFA's Minimal Diversity Requirement is Met

16.    CAFA requires that "any member of a class of plaintiffs" be "a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).  A corporation is a citizen of every state in which it is incorporated and the state where it has its principal place of business.  28 U.S.C. § 1332(c)(1).  According to the Complaint, Plaintiff is a citizen of Colorado.  *See* Compl. ¶¶ 37, 111.  New Chapter is a citizen of Delaware and Vermont.  *See* Compl. ¶ 41.  CAFA's minimal diversity requirement is therefore met.

6

## CAFA's 100-Member Requirement is Met

17.     Plaintiff's Complaint satisfies CAFA's 100-member requirement, *see* 28 U.S.C. § 1332(d)(5), because Plaintiff's claims are brought on behalf of the District of Columbia's "general public."  Compl. ¶ 111.  On information and belief, there are more than 100 consumers within the District of Columbia to whom New Chapter has marketed or sold the Prenatal Vitamins. *See* U.S. Census Bureau, *Quick Facts: District of Columbia* (July 1, 2019), https://www.census.gov/quickfacts/DC (estimating that D.C. has a population of more than 700,000); *see also O.A. v. Trump*, 404 F. Supp. 3d 109 (D.D.C. 2019) ("Plaintiffs may satisfy the [numerosity] requirement . . . by supplying estimates, rather than a precise number, of putative class members, so long as there is a reasonable basis for the estimate provided." (quotation marks and citations omitted)).  On information and belief, New Chapter estimates that it has sold more than 10,000 units of the Prenatal Vitamin products per year in the District of Columbia since August 26, 2017, which is the three-year limitations period applicable to CPPA claims.  *See* D.C. Code § 12-301(8).

## CAFA's Amount-in-Controversy Requirement is Met

18.     Although Plaintiff alleges no specific amount of damages, the factual allegations in the Complaint indicate that the amount in controversy exceeds CAFA's threshold.  *See* 28 U.S.C. § 1332(d)(2).  "[A]s specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *see also Bronner ex rel. Am. Studies Assoc. v. Duggan*, 962 F.3d 596, 610 (D.C. Cir. 2020) ("[A] [litigant] need not provide an exact valuation or detailed breakdown of damages at the outset of litigation, as the claimed sum controls if apparently made in good faith." (quotation marks omitted)).  Especially for purposes of

CAFA, courts recognize that the amount-in-controversy requirement "is less a prediction of how much the plaintiffs are ultimately likely to recover than it is an estimate of how much will be put at issue during the litigation." *Lavelle v. State Farm Mut. Auto Ins.*, 235 F. Supp. 3d 217, 224 (D.D.C. 2017) (internal quotation marks omitted); *see also, e.g.*, *Green v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020) (emphasizing that CAFA requires only that "it is reasonably possible that the potential liability exceeds $5 million").

19.     Here, Plaintiff seeks an order requiring New Chapter to provide "corrective advertising." Compl. at 25 (Prayer for Relief). "[T]he cost of the 'corrective marketing campaign' would flow directly from the injunction that plaintiff seeks," *Breath DC v. Santa Fe Nat'l Tobacco Co.*, 232 F. Supp. 3d 163, 170 (D.D.C. 2017), so it constitutes part of the amount in controversy, *see id.*; *see also Wexler v. United Air Lines, Inc.*, 496 F. Supp. 2d 150, 153 (D.D.C. 2007) ("The value of injunctive relief for determining the amount in controversy can be calculated as the cost to the defendant."). On information and belief, New Chapter estimates that the cost of a corrective marketing campaign for the Prenatal Vitamins would exceed the statutory amount in controversy threshold. *Cf. Fefferman v. Dr. Pepper Snapple Grp., Inc.*, No. 3:13-cv-00160-H, 2013 WL 12114486, at *3 (S.D. Cal. Mar. 12, 2013) (estimating that "the corrective advertisement campaign would cost Defendants approximately $4,985,000," including the costs for disposing of unused packaging and product, repurchasing and reclaiming unsold products from retailers, and undertaking a one-month multimedia advertising campaign to correct alleged misrepresentations); *Breathe DC*, 232 F. Supp. 3d at 170 (considering "the estimated $700,000 in redesign costs and $200,000 in 'corrective marketing campaign' costs, for a total of $900,000, as the costs of compliance with the proposed injunction").

20.     Plaintiff also seeks an order enjoining New Chapter from "conduct found to be in violation of the CPPA."  Compl. at 25 (Prayer for Relief).  If Plaintiff succeeds in securing such relief based on the allegations in the Complaint, New Chapter will likely be required to recall any and all Prenatal Vitamins for sale in the District of Columbia *and* either redesign the packaging and marketing for all three products to remove the allegedly objectionable claims or reformulate the products as a direct consequence of Plaintiff's success.  *See Fefferman*, 2013 WL 12114486, at *3.  On information and belief, New Chapter estimates it would cost more than approximately $75,000 to recall the Prenatal Vitamin products in the District of Columbia and more than $150,000 to reformulate the Prenatal Vitamins.

21.     Additionally, on information and belief, New Chapter estimates that, as a direct cost to comply with an injunction ordering it to stop selling its products as currently formulated and labeled, New Chapter would reasonably likely lose brand value in excess of the statutory amount in controversy threshold.

22.     Apart from costs of complying with an injunction, Plaintiff seeks to recover attorneys' fees and costs associated with this litigation.  *See* Compl., Prayer for Relief.  Because the CPPA permits recovery of attorneys' fees and costs for prevailing plaintiffs, *see* D.C. Code § 28-3905(k)(2)(B), those fees are part of the amount in controversy.  *See Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 193, 301 (D.D.C. 2013).  Based on attorneys' fees awards in other consumer protection matters, an award for Plaintiff's attorneys' fees if Plaintiff prevails on all of their claims at trial is reasonably likely to exceed CAFA's amount in controversy requirement.  *See, e.g.*, *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 977 (8th Cir. 2018) (affirming $6.75 million attorneys' fee award in consumer class action); *Keil v. Lopez*, 862 F.3d 685 (8th Cir. 2017) (affirming $8 million attorneys' fee award in consumer class

action); *In re Capital One Tel. Consumer Protection Act Litig.*, 80 F. Supp. 3d 781, 809 (N.D. Ill. 2015) (awarding attorneys' fees and costs totaling more than $15 million).

23.     Plaintiff also seeks punitive damages.  *See* Compl., Prayer for Relief.  In a CPPA action, punitive damages may be warranted where a plaintiff proves "by clear and convincing evidence that [the defendant acted with ] . . . a state of mind evincing malice or its equivalent." *Daka, Inc. v. McCrae*, 839 A.2d 682, 695 n.14 (D.C. 2003).  "Punitive damages are considered in determining the amount in controversy for purposes of diversity jurisdiction."  *See Hackman v. One Brands, LLC*, No. 18-2101, 2019 WL 1440202, at *6 (D.D.C. Apr. 1, 2019).  Although New Chapter denies that Plaintiff is entitled to any relief at all, punitive damage awards have been as high as $2 million in other CPPA actions.  *See, e.g.*, *Modern Mgmt. v. Wilson*, 997 A.2d 37, 54 (D.C. 2010).

24.     Based on the costs of developing and running a corrective marketing campaign, recalling the Prenatal Vitamins available for sale in the District of Columbia, reformulating or redesigning the packaging for the Prenatal Vitamins, paying attorneys' fees and costs, and potential punitive damages, the aggregate amount in controversy here satisfies CAFA's amount-in-controversy threshold.  *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 571 (2005). Because "a district court can determine, relying on its judicial experience and common sense, that [Plaintiff's] claim satisfies the amount-in-controversy requirements, it need not give credence to a plaintiff's representation that the value of the claim is indeterminate."  *Roe v. Michelin North Am., Inc.*, 613 F.3d 1058, 1064 (11th Cir. 2010).

25.     Plaintiff's Complaint falls within the scope of CAFA and meets all of the statute's other requirements.  Removal is therefore proper under CAFA.

## THIS COURT HAS TRADITIONAL DIVERSITY JURISDICTION

26.     If this Court finds that CAFA does not apply, this Court nonetheless has diversity jurisdiction under 28 U.S.C. § 1332(a).

27.     There is complete diversity between the parties because Plaintiff is a citizen of Colorado, *see* Compl. ¶ 37, while New Chapter is a Delaware corporation headquartered in Vermont, *see id.* ¶ 41.

28.     The jurisdictional amount in controversy under § 1332(a) is satisfied because it is evident from the Complaint that the amount in controversy exceeds $75,000.  Indeed, as set out above, *see supra* ¶¶ 18–24, the costs of developing and running a corrective marketing campaign, recalling the Prenatal Vitamins available for sale in the District of Columbia, reformulating or redesigning the packaging for the Prenatal Vitamins, paying attorneys' fees and costs, and potential punitive damages exceed the minimum amount in controversy.

29.     Moreover, if this Court finds that CAFA does not apply because this action is not a class action, it must also find that this is a single-plaintiff action, and that all damages relate to Plaintiff alone.  Although courts apply a non-aggregation principle under which "[t]he separate and distinct claims of two of more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement," *Snyder v. Harris*, 394 U.S. 332, 335 (1969), that principle is inapposite where, as here, only one plaintiff brings the action.

## THIS COURT HAS FEDERAL QUESTION JURISDICTION

30.     Removal is also proper under 28 U.S.C. §§ 1441 and 1331, which give federal district courts original jurisdiction over "all civil actions arising under the Constitution, laws or treaties of the United States," because Plaintiff's Complaint presents substantial federal questions.

31.     "Whether a case 'arises under' federal law for purposes of § 1331" depends on the well-pleaded allegations in the Complaint.  *Holmes Grp., Inc. v. Vornado Air Circulation Sys.,*

*Inc.*, 535 U.S. 826, 830 (2002).  A complaint raises a substantial question of federal law warranting removal if "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law," even if state law creates a Plaintiff's asserted cause of action.  *Empire Healthchoice Assurance Inc. v. McVeigh*, 547 U.S. 677, 690 (2006); *see also Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808–09 (1986).

32.     "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see also Grable*, 545 U.S. at 315.  "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts."  *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313–14).  This category of cases "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  *Grable*, 545 U.S. at 312.

33.     Although the Complaint purports to assert violations of D.C. consumer protection law, the allegations make clear that this action is necessarily based on alleged failures to meet *federal* standards concerning whether a product is adulterated and the sale, marketing, and labeling of prenatal vitamins.  This action raises substantial and actually disputed federal issues and is capable of resolution in federal court without disrupting Congress's federal-state balance. Removal is thus proper.

34.    First, this action necessarily raises federal issues.  "[A] federal issue is necessarily raised when the very success of the state claim depends on giving effect to a federal requirement, and the federal issue is an essential element of the state law claim." *Tantaros v. Fox News Channel, LLC*, 427 F. Supp. 3d 488, 494 (S.D.N.Y. 2019) (brackets, quotation marks, and internal citations omitted); *see also, e.g.*, *Grable*, 545 U.S. at 315 (finding federal question jurisdiction where "[w]hether Grable was given notice within the meaning of the federal statute [was] an essential element of its quiet title claim"); *Gunn*, 568 U.S. at 259 (finding federal question jurisdiction where, to prevail on a legal malpractice claim, plaintiff needed to "show that he would have prevailed in his federal patent infringement case if only [his attorneys] had timely made an experimental-use argument on his behalf").

35.    Here, the Complaint alleges that New Chapter sold "adulterated" Prenatal Vitamins, in violation of D.C. Code § 48-103.  *See* Compl. ¶¶ 21, 122.  But the federal government, through the Food and Drug Administration ("FDA") is charged with regulating the sale of prenatal vitamins.  *See*  21 U.S.C. § 321(ff) (regulating "dietary supplement[s]," including products that contain vitamins, minerals, herbs, or botanicals, as food products).  Pursuant to that authority, FDA establishes when a vitamin product shall be deemed adulterated, *see id.* § 342(f).  D.C. law, which the Complaint accuses New Chapter of violating, copies the federal standard.  *See* D.C. Code § 48-103 (repeatedly citing the federal standard).  It creates no independent legal standard for assessing when a vitamin product is adulterated.  Thus, to determine whether New Chapter's products were "injurious to health," as Plaintiff alleges, *see* Compl. ¶ 121, a court will necessarily have to rely on and apply FDA's statutory and regulatory scheme and standards for adulteration. This case therefore presents a federal question.  *See Organic Consumers Assoc. v. Hain Celestial Group, Inc.*, 285 F. Supp. 3d 100, 102 n.2 (D.D.C. 2018).

36.     The Complaint also alleges that New Chapter used false, misleading, and deceptive labeling and marketing in connection with the sale of the Prenatal Vitamins.  *See* Compl. ¶¶ 82, 122 (alleging the Prenatal Vitamins contain harmful contaminants); *id.* ¶¶ 101–10 (alleging that New Chapter made "false, misleading, and deceptive representations and omissions" in the packaging of and marketing for the Prenatal Vitamins).  As with adulteration, the federal government, through FDA, sets the standards for determining when food labeling is false or misleading.  *See* 21 U.S.C. § 343(a).  The success or failure of Plaintiff's claims turns on establishing whether New Chapter met federal standards for labeling, marketing, and advertising.  Indeed, the Complaint shows that Plaintiff recognizes the centrality of federal agency determinations to its claim—Plaintiff relies expressly on federal agency decisions and statements as establishing unsuitable content for prenatal vitamins.  *See* Compl. ¶ 13 (citing alleged statements of the Environmental Protection Agency, the Food and Drug Administration, and the Centers for Disease Control and Prevention on safe levels of heavy metals); *id.* ¶ 56 (same).  Plaintiff's claim necessarily raises federal issues.

37.     Second, the federal issues raised here are actually disputed.  There is can be no doubt that a "[c]entral point of dispute," *Gunn*, 568 U.S. at 259, will be what standards federal law and federal agencies establish and whether New Chapter's Prenatal Vitamins were in fact adulterated, falsely advertised, or deceptively marketed, based on those standards.

38.     Third, the federal issues are substantial.  Questions about the standards for evaluating the safety, labeling, marketing, and advertising of prenatal vitamins are not only significant to the parties in this case, but also "significant to the federal system as a whole."  *Id.* at 264.

39.     Finally, this action is capable of resolution in federal court without disrupting Congress's federal-state balance.  In fact, Congress granted FDA authority to promulgate food safety and labeling regulations and recommendations with the goal of promoting national uniformity on these fronts.  Federal court resolution of these issues furthers Congress's goals.

40.     The Complaint, though purportedly based on a state-law claim, is actually premised on violations of duties contained in federal law as interpreted by FDA.  Because the Complaint necessarily raises substantial and actually disputed issues of federal law, removal is proper under §§ 1441 and 1331.

## REMOVAL TO THE DISTRICT COURT FOR THE DISTRICT OF COLUMBIA IS PROPER

41.     Removal to this Court is proper because this action was initially filed in the Superior Court for the District of Columbia.  *See* 28 U.S.C. § 1441(a) (providing that an action may be removed "to the district court of the United States for the district and division embracing the place where such action is pending").  By removing, New Chapter does not waive, and reserves the right to assert, defenses based on lack of personal jurisdiction and improper venue.

## THE OTHER REQUIREMENTS FOR REMOVAL ARE MET

42.     New Chapter has not filed any pleadings in the Superior Court responding to the Complaint.  New Chapter appeared in the Superior Court for the sole purpose of filing a consent motion extending its deadline to respond to the Complaint, which appears in the state-court case file attached as Exhibit 3.

43.     New Chapter will give Plaintiff prompt, written notice of the filing of this Notice of Removal, and a copy of this Notice will be filed with the Clerk of the Superior Court.  *See* 28 U.S.C. § 1446(d).  If Plaintiff seeks to file a motion to remand, New Chapter reserves the right to

supplement its arguments and evidence that establish that removal is proper. *See Dart Cherokee Basin Operating Co., LLC*, 574 U.S. 81 at 89.

Respectfully submitted,

DATED:  November 20, 2020

*/s Andrew Soukup*
Andrew Soukup (D.C. Bar No. 995101)
Henry B. Liu (D.C. Bar No. 986296)
Virginia A. Williamson (D.C. Bar No. 187220)
Covington & Burling LLP
850 Tenth Street, NW
Washington, DC 20001
202-662-6000
asoukup@cov.com
hliu@cov.com
vwilliamson@cov.com

*Attorneys for Defendant New Chapter, Inc.*