# EXHIBIT 1

Filed
**D.C. Superior Court**
**08/26/2020 15:06PM**
**Clerk of the Court**

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**

**CIVIL DIVISION**

| | | |
|---|---|---|
| CLEAN LABEL PROJECT FOUNDATION | * | |
| a 501(c)(3) | | |
| 280 E. 1ˢᵗ Ave., #873 | * | |
| Broomfield, Colorado 80038 | | Case No._____ |
| | * | |
| Plaintiff, | | COMPLAINT |
| v. | * | |
| | | DEMAND FOR JURY TRIAL |
| NEW CHAPTER, INC. | * | |
| | | |
| Serve on: | * | |
| Corporation Trust Company | | |
| Corporation Trust Center | * | |
| 1209 Orange St | | |
| Wilmington, DE 19801 | * | |
| | | |
| Defendant. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## **COMPLAINT**

On behalf of themselves and the general public, Plaintiff, Clean Label Project Foundation ("Clean Label Project" or "CLP"), hereinafter Plaintiff, by and through its counsel, bring this action against New Chapter Inc., ("New Chapter"), hereinafter Defendant, regarding the deceptive labeling, marketing, and sale of New Chapter Perfect Prenatal Multivitamin (48ct), New Chapter Perfect Prenatal Multivitamin (180 ct),  New Chapter Wholemega for Moms (180ct), ("Products"),[1] in the District of Columbia, that are adulterated with respect to quantifiable amounts of lead and cadmium.  Products were also found to contain detectable amounts of pesticides.  Contrary to Defendant's promises and assurances, CLP facilitated independent testing and discovered the adulterated Products are exposing mothers and their babies to contaminants; including lead, cadmium, and pesticides - compounds and contaminants known to cause reproductive harm in fetuses and infants.  Plaintiff alleges the following based upon information,

---

[1] Discovery may demonstrate that additional New Chapter Products are within the scope of this Complaint. Plaintiff reserves the right to amend this complaint to include additional prenatal items identified through the course of discovery.

1

belief, and the investigation of its counsel:

## **Introduction**

1. Due to advancements in modern science, prenatal development health has become increasingly important to consumers, to include D.C. consumers.

2. Consumers are increasingly concerned about ensuring the proper development of babies and how the products they ingest are affecting themselves and their babies, particularly during the early most crucial stages of development.

3. The American Academy of Pediatrics has noted that traditional nutrition is often inadequate to ensure proper prenatal health.

4. As such, it has been well founded that the clinical recommendation for a pregnant woman is to take a prenatal vitamin during her pregnancy.

5. Consumers seek out and choose prenatal vitamins based on the concerns regarding supplements during the prenatal process.

6. New Chapter is aware of the importance of supplements during the delicate prenatal process, as it is the sole reason for the creation of the market for the Products.

7. New Chapter is aware, or should be aware, of the formulation standards for vitamins.

8. New Chapter is aware of how it packages its Products.

9. New Chapter packages its Products as:



**Figure 1**

10. Prenatal exposure to reproductive toxins such as lead and cadmium can cause permanent damage to an already delicate process.

11. Lead and cadmium are dangerous toxic metals to a developing fetus.

12. Prenatal exposure to lead is not safe at any level and can lead to deleterious or even fatal results during pregnancy and fetal growth and development, such as lower intelligence later in life as well as reduced fertility and a higher risk of miscarriage.[2]

13. The Environmental Protection Agency, Food and Drug Administration, The World Health Organization, The Centers for Disease Control and Prevention, The American Medical Association, and The Academy of Pediatrics have all independently stated there is no safe level of lead for children.

    a. The Environmental Protection Agency has stated, "[t]he Maximum Contaminant Level Goal for lead is zero.  EPA has set this level based on the best available science which

---

[2] Vorvolakos, Theofanis & Arseniou, S. & Samakouri, Maria. (2016). There is no safe threshold for lead exposure: A literature review. Psychiatriki. 27. 204-214. 10.22365/jpsych.2016.273.204.

3

shows there is no safe level of exposure to lead."[3]

b.   The Food and Drug Administration has stated "[t]here is no known identified safe blood lead level."[4]

c.   The World Health Organization has likewise stated, "[t]he neurological and behavioural effects of lead are believed to be irreversible.  There is no known 'safe' blood lead concentration…"[5]

d.   The Centers for Disease Control have found "[n]o safe blood lead level has been identified."[6]

e.   The American Medical Association has stated: "We know that there is no safe level of lead."[7]

f.   The American Academy of Pediatrics has stated: "There is no safe level of lead exposure in children, with lasting decreases in cognition documented in children with blood levels as low as 5 micrograms per deciliter of lead in blood."[8]

14. Ensuring the safety of neurological development is the very point of the prenatal vitamin.

15. The presence of toxic metals impairs the neurological development of the fetus.

16. The presence of toxic heavy metals or pesticides should not be contained within prenatal vitamins

---

[3] EPA, *Basic Information about Lead in Drinking Water,* (August 13, 2020), https://www.epa.gov/ground-water-and-drinking-water/basic-information-about-lead-drinking-water#:~:text=EPA%20has%20set%20the%20maximum,in%20the%20body%20over%20time..

[4] Welch, Teresa, *Lead Found in 20% of Baby Food, Report Says,* (June 19, 2017), https://www.charlotteobserver.com/news/nation-world/national/article157063044.html

[5] World Health Organization, *Lead Poisoning and Health,* (August 23, 2019), https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health#:~:text=The%20neurological%20and%20behavioural%20effects,behavioral%20difficulties%20and%20learning%20problems.

[6] CDC, *National Biomonitoring Program, Factsheet,* (July 12, 2013), https://www.cdc.gov/biomonitoring/Lead_factsheet.html#:~:text=No%20safe%20blood%20lead%20level,half%20a%20cup%20of%20liquid.).

[7] AMA, *AMA Adopts New Policies to Prevent Future Lead Poisoning,* (June 14, 2016), https://www.ama-assn.org/press-center/press-releases/ama-adopts-new-policies-prevent-future-lead-poisoning.

[8] American Academy of Pediatrics, *Lead Exposure in Children,* (2016), https://www.aap.org/en-us/Pages/ErrorPage.aspx?requestUrl=https://www.aap.org/en-us/advocacy-and-%20policy/aap-health-initiatives/lead-exposure/Pages/Lead-Exposure-in-Children.aspx..

and are extremely dangerous to the prenatal process.

17. Pesticides are known, or suspected, carcinogens or toxins in both women and fetuses.

18. Pesticide exposure can lead to severe damage to DNA and other deleterious health outcomes.

19. In order to capture a market concerned about what is included and excluded from vitamins and supplements, New Chapter describes the Products as:

**CRAFTED WITH NATURE'S PURE INGREDIENTS**

At New Chapter, we use Earth's powerful herbs and superfoods to give you the best possible supplement. That means we source ethically, select organic ingredients carefully, and test everything for purity (and then test again!). We do all of this with no GMO's, no harsh chemical solvents, and no sub-par ingredients!

**Figure 2**

20. New Chapter produces products that are sold to consumers through retail stores, to include within the District of Columbia, and online.

21. The presence of detectible amounts of lead and cadmium, and pesticides in the Products renders the Products adulterated under DC Code §48-103 *et seq.*

22. The Products in question are:

    a.   New Chapter Perfect Prenatal Multivitamin (48ct)

    b.   New Chapter Perfect Prenatal Multivitamin (180ct)

    c.   New Chapter Wholemega for Moms (180ct)

23. Plaintiff caused the purchase of the Products for the purpose of evaluation by an ISO 17025-accredited third-party, analytical chemistry laboratory. Quantitative testing performed by that laboratory indicated that, in stark contrast to the promises made by New Chapter, the Products purchased contain quantifiable levels of heavy metals, as well as detectable amounts of WHO Class II Pesticides.

24. This testing suggests that the above-mentioned toxins and contaminants are present in the Products, or at a minimum, that New Chapter makes no efforts to confirm that the contaminants are not present.  As a result, D.C. consumers bear the risk of purchasing products that contain toxic heavy metals and pesticides, both of which are extremely dangerous to the fetus.

25. D.C. consumers are enticed to purchase these Products over the products of New Chapter's competitors on the basis of these claims.

26. A reasonable D.C. consumer would not expect Defendant's Products, formulated to assist with the healthy formation of a fetus, to be adulterated to contain toxins and contaminants that are by their very nature damaging to the fetus.

27. Third-party testing of over 200 prenatal vitamin products revealed that these contaminant issues are not ubiquitous to the prenatal vitamin category, reflecting unique quality control deficiencies on behalf of Defendant.

28. Moreover, the Products are being used primarily by an already at-risk population, including

females who are pregnant and the unborn, developing fetuses.

29. In sum, New Chapter is unconscionably deceiving D.C. consumers by potentially harming the fetus through adulteration of the Products, to include quantifiable levels of heavy metals and detectable amounts of pesticides.

30. New Chapter's false and misleading representations and omissions, including any tendency to mislead or omit, violate the District of Columbia Consumer Protection Procedures Act ("DC CPPA"), DC Code §28-3901, *et seq.*

31. New Chapter's labeling and advertising of the Products tend to mislead and are materially deceptive about the true nature, quality, and ingredients of the Products.  Plaintiff brings this deceptive advertising cause on behalf of itself and the general public, and seeks relief, including but not limited to: an injunction to halt New Chapter's false and misleading marketing and sale of New Chapter's Products.

## Jurisdiction and Venue

32. This Court has personal jurisdiction over the parties in this case.  Plaintiff, by filing this Complaint, consents to this Court having personal jurisdiction over it and this matter.

33. This Court has personal jurisdiction over Defendant pursuant to D.C. Code §13-423.  Defendant has sufficient minimum contacts with the District of Columbia to establish personal jurisdiction of this Court over them given that, *inter alia,* Defendant is engaged in deceptive schemes and acts directed at persons residing in, located in, or doing business in, the District of Columbia, or otherwise purposefully avails itself of the laws of the District of Columbia through its marketing and sales of the Products in the District of Columbia.

34. This Court has subject matter jurisdiction over this action pursuant to D.C. Code §28-

7

3905(k)(1)(B), (k)(1)(C) and (k)(2).[9]

## **Parties**

35. Clean Label Project ("CLP") is a section 501(c)(3) non-profit public interest organization whose mission is to educate the public and enable consumers to make informed shopping choices.

36. CLP performs its work throughout the United States, including in the District of Columbia.

37. CLP uses state-of-the-art laboratory testing to identify the best and worst labeled products and publishes top and bottom performers on its website free of charge.

38. CLP was formed in 2016 with the goal of reducing contamination across all consumer-packaged goods products.

39. CLP has an interest in food label truth and transparency, and consumers' right to know what is in the products they purchase.  To that end, CLP educates consumers by presenting unbiased science in a straightforward and useful medium to the public, allowing consumers to make data-based decisions.

40. In 2018, Clean Label Project caused the purchase of the New Chapter Products as well as over 200 other prenatal vitamin products in order to evaluate their purity.

41. At all times herein New Chapter was a Delaware based corporation with a principal place of business in Vermont.

42. Defendant markets and distributes the Products online and in retail stores, in the District of Columbia, and throughout the United States.

43. Upon information and belief, Defendant has caused harm to the general public of the District of

---

[9] There is no diversity jurisdiction as the amount in controversy does not exceed the federal standard.

Columbia.

44. Plaintiff is acting on behalf of the general public as private attorneys pursuant to D.C Code §28-3905(k)(1)(C)-(D).

45. Plaintiff is a non-profit organization pursuant to D.C. Code §28-3901(a)(14) and the public-interest organizations pursuant to D.C. §28-3901(a)(15).  Plaintiff is a longstanding advocate of the rights of consumers, including but not limited to D.C. consumers, for truthful labeling and marketing.

## The Dangers of Heavy Metals: Lead and Cadmium

### Dangers of Lead

46. Lead is a heavy metal and a known carcinogen and neurotoxin. Lead resembles other metals that the human body needs to properly function, and as such it is readily absorbed into body tissue.[10]

47. Lead readily crosses the placenta, impacting embryonic and fetal development.[11]

48. Lead can damage and/or destroy cells once in the body; it also remains in the body for an extended period of time, causing even greater extent to the damage.[12]

49. Specifically, lead damages the myelin sheaths of neurons (protective insulation essential for proper neuronal functioning)[13] and interferes with neurotransmission (the communication

---

[10] Wani, A. L., Ara, A., & Usmani, J.A. (2015). Lead toxicity: a review. *Interdisciplinary toxicology*, 8(2), 55-64., https://www.ncbi.nlm.nih.gov/PLC/articles/PMC4961898/.
[11] Foltinova, J., Foltin, V., & Neu, E. (2007). *Occurrence of lead in placenta–important information for prenatal and postnatal development of child.* Neuroendocrinology Letters, *28*(4), 335-340
[12] *Id.*
[13] Dabrowska-Bouta, B., Sułkowski, G., Bartosz, G., Walski, M., & Rafałowska, U. (1999). *Chronic lead intoxication affects the myelin membrane status in the central nervous system of adult rats.* Journal of Molecular Neuroscience, *13*(1-2), 127-139.

between neurons)[14] both of which are potentially disastrous for human cognition and development.

50. Lead also interferes with the levels of Brain Derived Neurotrophic Factor (BDNF) an important neuroprotective molecule that plays a principle role in neurodevelopment, specifically neurogenesis.[15]

51. One mechanism behind the benefits of DHA supplementation (discussed above) is upregulation of BDNF in the brain.[16]

52. Prenatal lead exposure has known adverse effects on maternal health and infant outcomes across a wide range of maternal blood lead levels.

53. A principle risk of prenatal exposure to lead is a reduction in intelligence, with experts demonstrating a direct relationship between childhood blood-lead levels and intelligence quotient (IQ).[17]

54. The consequences of even low-level (part-per-billion) exposure can be severe.

55. In Flint, Michigan, following city-wide exposure to part-per-billion levels of lead in drinking water the portion of Flint's third graders who tested as proficient in reading at grade level fell from 41.8% to 10.7%.[18]

56. As discussed above, the Environmental Protection Agency, Food and Drug Administration, the World Health Organization, Centers for Disease Control and Prevention, the American Medical

---

[14] Neal, A. P., & Guilarte, T. R. (2010). *Molecular neurobiology of lead (Pb 2+): effects on synaptic function*. Molecular neurobiology, *42*(3), 151-160.
[15] Bradbury, J. (2011). *Docosahexaenoic acid (DHA): an ancient nutrient for the modern human brain*. Nutrients, *3*(5), 529-554.
[16] *Id.*
[17] COUNCIL ON ENVIRONMENTAL HEALTH, *Pediatrics*, 2016;138:e20161493
[18] Grossman, Slusky, *The Effect of an Increase in Lead in the Water System on Fertility and Birth Outcomes: The Case of Flint, Michigan,* accessed at http://www2.ku.edu/~kuwpaper/2017Papers/201703.pdf

Association, and the American Academy of Pediatrics have all independently stated that there is no safe level of lead for children.

57.    Thus, by its very nature, the presence of lead in prenatal vitamins is antithetical to a mission to support brain health, as the presence of lead in prenatal vitamins is a "[…] deleterious substance which may render it injurious to health[…]" under DC Code §48-103 *et seq.*

**Dangers of Cadmium**

58.    Cadmium is also a heavy metal and a known neurotoxin and an International Agency for Research on Canter ("IARC") class 1 carcinogen, known for having both short-term and long-term deleterious effects on human health.

59.    Cadmium readily crosses the placenta, accumulating in fetal or embryonic tissue.[19]

60.    Once absorbed, Cadmium has a long half-life in the body, especially in the kidneys. Chronic Cadmium exposure has been shown to adversely affect kidney and bone and to increase the risk of cancer.  Cadmium also functions as an endocrine disruptor and may thus affect reproduction and child neurodevelopment.[20]

61.    Specifically, Cadmium impairs brain health through multiple pathways, including the interruption of DNA repair, the generation of reactive oxygen species, and, most critically, the disruption of neuronal proliferation and differentiation – two steps in the neurogenesis process occurring during the infancy critical period.[21]

---

[19] Gundacker C, Hengstschläger M. *The role of the placenta in fetal exposure to heavy metals*. Wien Med Wochenschr. 2012;162(9-10):201-206. doi:10.1007/s10354-012-0074-3
[20] Kippler, M., Tofail, F., Gardner, R., Rahman, A., Hamadani, J. D., Bottai, M., & Vahter, M. (2012). *Maternal cadmium exposure during pregnancy and size at birth: a prospective cohort study*. Environmental health perspectives, *120*(2), 284–289. https://doi.org/10.1289/ehp.1103711.
[21] Branca, J. J. V., Morucci, G., & Pacini, A. (2018). *Cadmium-induced neurotoxicity: still much ado*. Neural regeneration research*, 13*(11), 1879.

62. Therefore, early life exposure to cadmium is associated with poor cognitive outcomes in children.[22]

63. Cadmium also interferes with the levels of Brain Derived Neurotrophic Factor (BDNF)[23] an important neuroprotective molecule that plays a principle role in neurodevelopment.[24]

64. One mechanism behind the benefits of DHA supplementation (discussed above) is upregulation of BDNF in the brain.[25] Thus, the presence of cadmium detracts from a principle function of DHA – a basis Nature's Bounty's "brain development" claims

65. This cadmium-mediated disruption of neuro-development renders Nature's Bounty Products adulterated under DC Code §48-103 *et seq* as brain development is a marketed benefit of Nature's Bounty Products

66. In general, women are more susceptible to cadmium toxicity, mainly because of increased intestinal uptake of cadmium given low iron stores, which are more prevalent in women than in men.[26]

67. Worse, cadmium has been shown to accumulate in in placental tissues, where it interrupts micronutrients (such as zinc) diffusion through the placenta.[27]

68. Thus, scientific evidence demonstrates that cadmium directly interferes with Nature's Bounty

---

[22] Sanders, A. P., Henn, B. C., & Wright, R. O. (2015). *Perinatal and childhood exposure to cadmium, manganese, and metal mixtures and effects on cognition and behavior: a review of recent literature*. Current environmental health reports, *2*(3), 284-94.

[23] Wang, Y., Chen, L., Gao, Y., Zhang, Y., Wang, C., Zhou, Y., ... & Tian, Y. (2016). *Effects of prenatal exposure to cadmium on neurodevelopment of infants in Shandong, China*. Environmental pollution, *211*, 67-73.

[24] Bradbury, J. (2011). *Docosahexaenoic acid (DHA): an ancient nutrient for the modern human brain*. Nutrients, *3*(5), 529-554.

[25] Bradbury, J. (2011). *Docosahexaenoic acid (DHA): an ancient nutrient for the modern human brain*. Nutrients, *3*(5), 529-554.

[26] *Id.*

[27] Kippler, M., Hoque, A. W., Raqib, R., Öhrvik, H., Ekström, E. C., & Vahter, M. (2010). *Accumulation of cadmium in human placenta interacts with the transport of micronutrients to the fetus*. Toxicology letters, *192*(2), 162-168.

Products as the presence of cadmium in prenatal vitamins is a "[…] deleterious substance which may render it injurious to health[…]"

**The Dangers of Pesticides**

69. Pesticides are used in the cultivation of many plant products; however, they are frequently hazardous to human health.

70. Pesticides contain chemicals that are used to attack the nervous system of the insects and cause them to die. During the first trimester of pregnancy, the nervous system is rapidly developing and therefore vulnerable; thus, pesticides are particularly dangerous.

71. Studies indicate that the greatest risk of exposure to pesticides is during the first 3 to 8 weeks of the first trimester when the neural tube development is occurring.[28]

72. Pesticides have been shown to damage DNA, which can lead to the development of cancer.

73. Pesticides are known carcinogens and toxins that have been linked to adverse human health. As such, many pesticides are banned in the United States.

74. Pesticides are extremely dangerous to the prenatal development phase as it is an especially vulnerable time for human health.

**Factual Allegations**

75. New Chapter is aware that there are health risks associated with pregnancy.

76. New Chapter is aware of the dangers of heavy metal toxins and other contaminants during

---

[28] Study, Mayhoub F, Berton T, Bach V, Tack K, Deguines C, et al. (2014) Self-Reported Parental Exposure to Pesticide during Pregnancy and Birth Outcomes: The MecoExpo Cohort Study. PLOS ONE 9(6): e99090.

pregnancy.

77. New Chapter is aware there is a market for pregnancy supplements to support healthy pregnancy for mother and baby.

78. To capture this market, New Chapter manufactures, produces, and distributes vitamins for the purpose of supporting a healthy pregnancy.

79. Given the above, it follows that New Chapter is aware that consumers are concerned with the contents of its supplements.

80. New Chapter is also aware that consumers seek supplements for specific health reasons.

81. Further, New Chapter is aware that the consumers who seek out prenatal vitamins are a vulnerable group of consumers to whom such products' contents are of a heightened importance.

82. New Chapter's Products are adulterated and contain quantifiable amounts of heavy metals and detectable amounts of WHO Class II pesticides, all of which are harmful if exposed to both mothers and babies during the prenatal process.

**New Chapter's Marketing is Unconscionably Misleading and Omits Material Facts**

83. To capture the market for prenatal vitamins and supplements, New Chapter claims to be a market leader in supplement quality:





**Figure 3**

84. New Chapter assures the quality of the Products are good for both mother and baby:



## Perfect Prenatal™ Multivitamin

Our award-winning Perfect Prenatal vitamin delivers essential nutrients to support mom's wellness and baby's healthy development.* This prenatal vitamin is designed so your body can absorb the nutrients, with finely tuned levels of each vitamin and mineral, and fermented with probiotics. It's good for you, good for your baby, and gentle even on an empty stomach.

**Figure 4**

85. New Chapter separates itself from competitors by the quality of the ingredients used in the Products:

What makes New Chapter's prenatal vitamin different?

Perfect Prenatal Multivitamins are made with high-quality, organic, non-GMO ingredients to nourish you and your baby every step of the way. We select the types of nutrients that work best with the body, and ferment key ingredients with whole foods and probiotics. Unlike gummy prenatal vitamins, our formula gives you the good stuff without any added sugar or animal gelatin.

* Fermented with whole-food nutrients and formulated for absorption
* Superfood herbal blends for you and your baby's wellness
* Complete nutrition throughout the day with 3 nutrient-packed tablets
* Gentle enough to take anytime, even on an empty stomach
* First prenatal vitamin to be made with certified organic vegetables and herbs

**Figure 5**

86. New Chapter outlines the alleged quality of the Products as all organic and the "perfect prenatal multivitamin."



**Figure 6**

87. New Chapter goes as far as to say they make products that assuredly will "Do no harm":

16



## Do no harm

We employ the Golden Rule, and create products we would –
and do – give to our loved ones. We aim to support human
health, community, and Mother Earth with every business
decision we make. As such, we are a Certified B
Corporation, balancing people, planet, and profit.

**Figure 7**

88. New Chapter assures the Products will do no harm by its methods and testing procedures, yet the
below-disclosed testing results would reflect otherwise.

# Raw materials & finished products strictly verified

* Marker compounds assayed

* Identity and composition verified

* Tested for heavy metals

* Tested for adulterants or aflatoxins

* Tested for residual solvents

* Tested for pesticides

* Label claims verified

* Identity verified

**Figure 8**

89. New Chapter's promises of safety on their packaging website and marketing give consumers a false expectation that the Products will not contain quantifiable amounts of heavy metals and other contaminants, when in fact they do.

90. These toxins are not listed, labeled, or advertised and have extreme negative health effects on both mother and baby:

    a.  Lead

    b.  Cadmium

    c.  Pesticides

91. Further yet, the Products also contain WHO Class II pesticides, denoted as "moderately hazardous to human health.".

92. Consumers who seek out and purchase the Products do not expect them to contain toxic heavy metals and pesticides. Moreover, consumers would not purchase Defendant's Products, made solely for the supplementation of healthy prenatal process, if they knew it contained ingredients that could in fact encourage the exact opposite.

**The Presence of Quantifiable Amounts of Heavy Metals in the Products**

93. CLP caused the purchase of the Products for the purposes of testing in the fall of 2018 and shipped the Products to the laboratory in the fall of 2018.

94. In the winter of 2018, quantitative testing was performed by an independent ISO 17025-accredited, analytical chemistry laboratory on samples of the Products, caused to be purchased by Plaintiff, as well as over 200 other samples of prenatal vitamins.

95. The testing was conducted via a blinded methodology to fully protect impartiality.  All prenatal vitamins, to include Defendant's Products, were sampled out into conical tubes and numbered. The product name and corresponding number were maintained by CLP to protect independence and confidentiality.

96. The results are in parts-per-billion (ppb):

    a.   New Chapter Perfect Prenatal Multivitamin (48ct)

        i.   As a result of the Quantitative testing, the sample of Defendant's Product yielded a lead content of 134.79ppb, which on a per-serving basis is higher than 84.2% of other prenatal vitamins tested.

        ii.   As a result of the Quantitative testing, the sample of Defendant's Product yielded

19

a cadmium content of 109.52ppb, which on a per-serving basis is higher than 85.7% of other prenatal vitamins tested.

b.  New Chapter Perfect Prenatal Multivitamin (180ct)

   i.  As a result of the Quantitative testing, the sample of Defendant's Product yielded a lead content of 73.2ppb, which is on a per-serving basis higher than 44.3% of other prenatal vitamins tested.

   ii.  As a result of the Quantitative testing, the sample of Defendant's Product yielded a cadmium content of 84.1ppb, which is on a per-serving basis higher than 55.1% of other prenatal vitamins tested.

## The Presence of Pesticides in the Products

97.  CLP caused the purchasing of the Products for the purposes of testing in the fall of 2018 and shipped the Products to the laboratory in the fall of 2018.

98.  In the winter of 2018, quantitative testing was performed by an independent ISO 17025-accredited, analytical chemistry laboratory on samples of the Products caused to be purchased by Plaintiff as well as over 200 other samples of prenatal vitamins.

99.  The testing was conducted via a blinded methodology to fully protect impartiality. All prenatal vitamins, to include Defendant's Products, were sampled out into conical tubes and numbered. The products' names and corresponding numbers were maintained by CLP to protect independence and confidentiality.

100.  Analytical testing identified detectable amounts of pesticides in the following product:

a.  New Chapter Perfect Prenatal Multivitamin (48ct)

    i.   Hexachlorobiphenyl, a Class II hazardous pesticide (moderately hazardous to human health).

    ii.   DDE, a Class II hazardous pesticide (moderately hazardous to human health).

    iii.   DDT, a Class II hazardous pesticide (moderately hazardous to human health).

**New Chapter Knew or Should Have Known its Representations Were False**

101.   New Chapter holds itself out to the public as a trusted source of prenatal supplements and vitamins.

102.   New Chapter knew or should have known what representations it made regarding the Products.

103.   New Chapter also knew or should have known how its Products were sourced, processed, and marketed.

104.   New Chapter knew, or should have known, the facts demonstrating that the Products were mislabeled, falsely advertised, and adulterated.

105.   D.C. consumers rely on label representations and marketing information in making purchase decisions.

106.   New Chapter made false, misleading, and deceptive representations and omissions intending for D.C. consumers to rely upon those representations and omissions in purchasing the Products.

107.   New Chapter knows that D.C. consumers seek out prenatal vitamin supplements that these consumers believe to be properly formulated and not adulterated.

108.   Upon information and belief, New Chapter has failed to remedy the problem with the Products, thus causing ongoing harm to D.C. consumers.

109. D.C. consumers are at risk of real, immediate, and continuing harm if Defendant's Products continue to be sold with misleading and/or deceptive representations or omissions.

110. Reasonable consumers do not expect Defendant's Products, represented and advertised as a prenatal vitamin, to be adulterated and to contain toxic heavy metals and pesticides that are dangerous and adverse to the prenatal process and undermine the very purpose of the Products.

## Cause of Action Violation of the District of Columbia Consumer Protection Procedures Act

111. Pursuant to D.C. Code §28-3905(k)(1) and 28-39905(k)(2), the Clean Label Project ("CLP") brings this claim on behalf of itself and the general public of the District of Columbia for New Chapter's violation of the District of Columbia Consumer Protection Procedures Act, D.C. Code §28-3901 *et seq.*

112. Plaintiff incorporates by reference all allegations in the preceding paragraphs of this Complaint.

113. New Chapter adulterated the Products given that the presence of heavy metals and pesticides impairs the neurological development of the fetus, in direct contrast to the purpose of the prenatal vitamin.

114. New Chapter's advertising of the Products misrepresents, tends to mislead regarding material facts, and omits facts regarding the source, characteristics, standard, qualities, or grades that New Chapter states and implies.

115. The Products lack the characteristics, ingredients, benefits, standards, qualities, or grades that New Chapter states and implies.

116. New Chapter's misstatements, innuendo, and omissions of material fact are material and have the tendency to mislead.

117. New Chapter knowingly did not sell the Products as advertised.

22

118. The facts as alleged above demonstrate that New Chapter has violated the CPPA, D.C. Code §28-3901 *et seq.*

119. New Chapter's conduct is unlawful trade practice "whether or not any consumer is in fact mislead, deceived, or damaged thereby." D.C. Code §28-3904.

120. CLP has a sufficient nexus to D.C. consumers of the Products to adequately represent their interests.

121. Due to the fact that New Chapter misrepresents the characteristics, ingredients, and benefits of the Products; misrepresents the standard, quality, and grade of the Products; misrepresents, fails to state, and uses innuendo and ambiguity in ways which tend to mislead reasonable consumers with regard to material facts about the Products; advertises the Products without the intent to sell the Products as advertised; and has adulterated the Products, New Chapter's marketing of the Products as, violates D.C. Code §28-3901 *et seq.* Specifically, New Chapter has violated D.C. Code §28-3904, which makes it an unlawful trade practice to:

   a. represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; …

   d. represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;

   e. misrepresent as to a material fact which has a tendency to mislead; …

   f. fail to state a material fact if such failure tends to mislead

   f-1. [u]se innuendo or ambiguity as to a material fact, which has a tendency to mislead; … [or]

23

    h.   advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered.

122.   Additionally, New Chapter has violated D.C. Code §28-3904 *et seq*, pursuant to the definition of "Adulterated", as defined in D.C. Code §48-103 as the presence of these contaminants render the Products "injurious to health."

123.   New Chapter is a "person" within the meaning of D.C. Code §28-3901(a)(1), and is a merchant under D.C. Code §29-3901(a)(3) and provides "goods" within the meaning of D.C. Code §28-3901(a)(7).

124.   Pursuant to D.C. Code §28-3905(1)(C), "[a] nonprofit organization may, on behalf of itself or any of its members, or on any such behalf and on behalf of the general public, bring an action seeking relief from the use of a trade practice in violation of a law of the District of Columbia, including a violation involving consumer goods or services that the organization purchased or received in order to test or evaluate qualities pertaining to use for personal, household, or family purposes."

125.   CLP is a nonprofit organization pursuant to D.C. Code §28-3905(k)(1)(C) that caused the Product to be purchased in order to test or evaluate their qualities.

126.   Pursuant to D.C. Code §28-3905(k)(1)(D)(i), "public interest organizations may, on behalf of the interests of a consumer or class of consumers, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District if the consumer or class could bring an action under subparagraph (A) of this paragraph for relief from such use by such person or such trade practice."

127.   The only limitation on this power of a public interest organization to act on behalf of consumers is that the public interest organization must have "sufficient nexus to the interests involved of

24

the consumer or class to adequately represent those interests." D.C. Code §28-3905(k)(1)(D)(ii).

128. As set forth in this Complaint, Plaintiff was founded with the purpose of advocating for and educating consumers, including consumers in the District of Columbia, in the arena of clean and healthy food and ecological systems. Plaintiff's mission is to bring truth and transparency to food and consumer products labeling. In addition, Plaintiff has retained the undersigned competent counsel, to pursue this action, and Plaintiff has previously represented District consumers in similar actions under the CPPA.

129. Plaintiff is a public-interest organization pursuant to D.C. Code §28-3905(k)(1)(D) and brings this action on behalf of members of the general public who could bring the action under D.C. Code §28-3905(k)(1)(A).

130. Section §28-3905(k)(1)(D)(i) of the CPPA allows for non-profit organizational standing and public interest organizational standing to the fullest extent recognized by D.C. Court of Appeals in its past and future decisions addressing the limits of constitutional standing under Article III.

131. Plaintiff is a "person" within the meaning of D.C. Code §28-3901(a)(1), a "non-profit organization" within the meaning of D.C. Code §28-3901(a)(14), and a "public interest organization" within the meaning of D.C. Code §28-3901(a)(15).

## **Prayer for Relief**

**WHEREFORE,** Plaintiff prays for judgment against Defendant including the remedies available under D.C. Code §28-3905(k)(2)(A-F):

A. A Declaration that New Chapter's conduct is in violation of the CPPA.

B. An Order enjoining New Chapter's conduct found to be in violation of the CPPA.

C. An Order requiring New Chapter to provide corrective advertising to the residents of the District of Columbia that restores consumers.

D.  An Order granting Plaintiff's costs and disbursements, including reasonable attorneys' fees and expert fees, and prejudgment interest at the maximum rate allowable by law.

E.  Punitive damages and any such further relief as this Court may deem just and proper.

## Jury Trial Demanded

Plaintiff Clean Label Project hereby demands a trial by jury.

Dated: 8/26/2020

Respectfully submitted,

Attorneys for Clean Label Project (CLP)

/s/ Travis Pittman

Travis Pittman
(D.C. Bar No. 1016894)
Local Counsel for Plaintiff
Holmes Pittman & Haraguchi, LLP
P.O. Box 380
Chester, MD  21619
Phone: (410) 482-9505
Fax: (443) 782-0362
jtpittman@hphattorneys.com

Kristen M. Ross, Esq.
(MD Bar No. 0712120212)
Davitt, Lalley, Dey & McHale, PC
1971 Beltline Ave., Suite 106
Grand Rapids, MI 49525
Tel: (202) 750-0355
kristen.ross@dldmlaw.com

26

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

CLEAN LABEL PROJECT FOUNDATION   Case Number: _____

vs

Date: 8/26/2020

NEW CHAPTER, INC.

☐ One of the defendants is being sued in their official capacity.

| Name: *(Please Print)* J. Travis Pittman | Relationship to Lawsuit |
|---|---|
| Firm Name: Holmes Pittman & Haraguchi, LLP | ☒ Attorney for Plaintiff |
| Telephone No.: (202) 329-3558    Six digit Unified Bar No.: 1016894 | ☐ Self (Pro Se) ☐ Other: _____ |

TYPE OF CASE:  ☐ Non-Jury    ☐ 6 Person Jury    ☒ 12 Person Jury

Demand: $ _____    Other: Declaratory Judgment

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: N/A _____    Judge: _____    Calendar #: _____

Case No.: _____    Judge: _____    Calendar#: _____

**NATURE OF SUIT:** *(Check One Box Only)*

**A. CONTRACTS**                    **COLLECTION CASES**

☐ 01 Breach of Contract   ☐ 14 Under $25,000 Pltf. Grants Consent   ☐ 16 Under $25,000 Consent Denied
☐ 02 Breach of Warranty   ☐ 17 OVER $25,000 Pltf. Grants Consent   ☐ 18 OVER $25,000 Consent Denied
☐ 06 Negotiable Instrument   ☐ 27 Insurance/Subrogation   ☐ 26 Insurance/Subrogation
☐ 07 Personal Property       Over $25,000 Pltf. Grants Consent       Over $25,000 Consent Denied
☐ 13 Employment Discrimination   ☐ 07 Insurance/Subrogation   ☐ 34 Insurance/Subrogation
☐ 15 Special Education Fees       Under $25,000 Pltf. Grants Consent       Under $25,000 Consent Denied
☐ 28 Motion to Confirm Arbitration   Award (Collection Cases Only)

**B. PROPERTY TORTS**

☐ 01 Automobile   ☐ 03 Destruction of Private Property   ☐ 05 Trespass
☐ 02 Conversion   ☐ 04 Property Damage
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

**C. PERSONAL TORTS**

☐ 01 Abuse of Process   ☐ 10 Invasion of Privacy   ☐ 17 Personal Injury- (Not Automobile, Not Malpractice)
☐ 02 Alienation of Affection   ☐ 11 Libel and Slander   ☐ 18 Wrongful Death (Not Malpractice)
☐ 03 Assault and Battery   ☐ 12 Malicious Interference   ☐ 19 Wrongful Eviction
☐ 04 Automobile- Personal Injury   ☐ 13 Malicious Prosecution   ☐ 20 Friendly Suit
☐ 05 Deceit (Misrepresentation)   ☐ 14 Malpractice Legal   ☐ 21 Asbestos
☐ 06 False Accusation   ☐ 15 Malpractice Medical (Including Wrongful Death)   ☐ 22 Toxic/Mass Torts
☐ 07 False Arrest   ☐ 16 Negligence- (Not Automobile, Not Malpractice)   ☐ 23 Tobacco
☐ 08 Fraud   ☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE        IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

☐ 01 Accounting
☐ 02 Att. Before Judgment
☐ 05 Ejectment
☐ 09 Special Writ/Warrants
    (DC Code § 11-941)
☐ 10  Traffic Adjudication
☐ 11 Writ of Replevin
☐ 12 Enforce Mechanics Lien
☒ 16 Declaratory Judgment

☐ 17 Merit Personnel Act (OEA)
    (D.C. Code Title 1, Chapter 6)
☐ 18 Product Liability

☐ 24 Application to Confirm, Modify,
    Vacate Arbitration Award (DC Code § 16-4401)
☐ 29 Merit Personnel Act (OHR)
☐ 31 Housing Code Regulations
☐ 32 Qui Tam
☐ 33 Whistleblower

**II.**

☐ 03 Change of Name
☐ 06 Foreign Judgment/Domestic
☐ 08 Foreign Judgment/International
☐ 13 Correction of Birth Certificate
☐ 14 Correction of Marriage
    Certificate
☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
☐ 27 Petition for Civil Asset Forfeiture (Currency)
☐ 28 Petition for Civil Asset Forfeiture (Other)

☐ 15 Libel of Information
☐ 19 Enter Administrative Order as
    Judgment [ D.C. Code §
    2-1802.03 (h) or 32-151 9 (a)]
☐ 20 Master Meter (D.C. Code §
    42-3301, et seq.)

☐ 21 Petition for Subpoena
    [Rule 28-I (b)]
☐ 22 Release Mechanics Lien
☐ 23 Rule 27(a)(1)
    (Perpetuate Testimony)
☐ 24 Petition for Structured Settlement
☐ 25 Petition for Liquidation

**D.  REAL PROPERTY**

☐ 09 Real Property-Real Estate
☐ 12 Specific Performance
☐ 04 Condemnation (Eminent Domain)
☐ 10 Mortgage Foreclosure/Judicial Sale
☐ 11 Petition for Civil Asset Forfeiture (RP)

☐ 08 Quiet Title
☐ 25 Liens: Tax / Water Consent Granted
☐ 30 Liens: Tax / Water Consent Denied
☐ 31 Tax Lien Bid Off Certificate Consent Granted

   /s/ Travis Pittman                    8/26/2020

        Attorney's Signature                       Date

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| CLEAN LABEL PROJECT FOUNDATION | * | |
| Plaintiff, | * | |
| v. | * | FILED WITH COMPLAINT |
| NEW CHAPTER, INC. | * | |
| Defendant. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## **VERIFICATION**

I, Jaclyn Bowen, verify under penalty of perjury according to the laws of the District of Columbia that I serve as Executive Director at Clean Label Project Foundation; that I have read the foregoing Complaint and know its contents; and that the facts stated therein are true to the best of my knowledge, information, and belief.

_____8/26/20_____
Date

Superior Court of the District of Columbia
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

## CLEAN LABEL PROJECT FOUNDATION

Plaintiff

vs.

## NEW CHAPTER, INC.

Case Number _____

Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

J. Travis Pittman
_____
Name of Plaintiff's Attorney

*Clerk of the Court*

P.O. Box 380, Chester, MD 21619
_____
Address

By _____

Deputy Clerk

(202) 329-3558
_____
Telephone

Date _____

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주세요     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
DIVISIÓN CIVIL
**Sección de Acciones Civiles**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

CLEAN LABEL PROJECT FOUNDATION
_____
                                        Demandante

        contra

NEW CHAPTER, INC.                                        Número de Caso: _____
_____
                                        Demandado

## CITATORIO

Al susodicho Demandado:

        Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

        A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

J. Travis Pittman
_____          *SECRETARIO DEL TRIBUNAL*
Nombre del abogado del Demandante

P.O. Box 380, Chester, MD 21619          Por: _____
_____
Dirección                                                 Subsecretario

(202) 329-3558
_____          Fecha _____
Teléfono

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202)879-4828 로 전화주십시오     ለ ትርጉም አስተርጓሚ ከፈለጉ (202) 879-4828 ይደውሉ

        IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

        Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                        Super. Ct. Civ. R. 4