## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CLEAN LABEL PROJECT FOUNDATION, | |
| Plaintiff, | |
| v. | Case No. <u>1:20-cv-03381</u> |
| NEW CHAPTER, INC. | Judge Christopher R. Cooper |
| Defendant. | |

### PLAINTIFF'S MOTION TO REMAND TO D.C. SUPERIOR COURT

COMES NOW, Plaintiff, Clean Label Project Foundation ("Plaintiff" or "CLP") and respectfully moves this Court to remand this case back to the D.C. Superior Court, and for its motion, states as follows:

### I.   INTRODUCTION

This case does not belong in federal court.  This case was brought in the D.C. Superior Court seeking injunctive relief under a D.C. consumer protection statute, and that is where this case belongs.  In removing this case to the District Court, Defendant has misconstrued it as a class action falling under the Class Action Fairness Act of 2005 ("CAFA") and Rule 23 of the Federal Rules of Civil Procedure.  The Court has already ruled on this issue in previous published opinions and has found that cases brought under the D.C. CPPA requesting injunctive relief are separate and distinct matters, not to be converted to, nor treated as, a class action. Defendant argues alternatively that the $75,000 threshold necessary for diversity jurisdiction would be satisfied by costs potentially incurred if they are required to conform their improper activities. However, these

arguments violate the non-aggregation principle and are directly contrary to this Court's own case law.

The Court has held in numerous cases that the D.C. Consumer Protection Procedures Act ("CPPA") is a separate and distinct type of action from CAFA and Rule 23. The Court has also ruled that the aggregation of the potential costs and fees of compliance with an injunction is not a permissible way to satisfy the $75,000 diversity threshold in a case that does not otherwise seek damages in that amount.

Additionally, Defendant argues this matter would meet the $5 million jurisdictional threshold of CAFA. Defendant has not met the required legal standard to a "legal certainty," given that Plaintiff has affirmatively plead the amount in controversy would not exceed even $75,000. The Defendant has put forth no reason the Court should now overturn its previous decisions regarding diversity jurisdiction and CAFA removal of D.C. CPPA cases and retain this case.

Lastly, Defendant argues that the matter raises a federal question. The Plaintiff's Complaint does not rely on or implicate actually disputed and substantial federal issues. Plaintiff's Complaint alleges violations of the D.C. CPPA as to the misleading nature of Defendant's marketing, labeling, and advertising of the Products; none of which is affected or impedes upon any federal regulation.

The Court should reject Defendant's arguments and remand the case back to the D.C. Superior Court.

## II. BACKGROUND

On August 26, 2020, Plaintiff CLP filed a complaint against New Chapter Inc., ("New Chapter" or "Defendant"), in the Superior Court for the District of Columbia. The Complaint asserts a cause of action for the violation of the D.C. Consumer Protection Procedures Act

("CPPA").[1]   CLP has brough suit on behalf of the general public and the class of interested consumers against New Chapter, alleging the sale of their New Chapter Perfect Prenatal Multivitamin (48ct), New Chapter Perfect Prenatal Multivitamin (180ct), New Chapter Wholemega for Moms (180ct), ("Products"), constituted unlawful trade practices under the D.C. CPPA.  Specifically, CLP alleges that the packaging, marketing and sale of the Products misled the public in the District of Columbia into believing that the product was free of contaminants not listed or represented as well as superior to other competitive prenatal vitamins. CLP alleges that the Product contained quantifiable levels of lead, cadmium, and pesticides. CLP is a non-profit public interest organization, and the sole plaintiff in this action. Pursuant to the Complaint, CLP seeks the following relief:

  a)   "[a]n Order enjoining [New Chapter's] conduct found to be in violation of the CPPA"

  b)   "a[n] Order requiring [New Chapter} to provide corrective advertising to the residents of the District of Columbia that restores consumers."

  c)   "a[n]" Order granting Plaintiff's costs and disbursements, including reasonable attorneys' fees and expert fees, and prejudgment interest at the maximum rate allowable by law," and

  d)   "[p]unitive damages."[2]

CLP agrees that New Chapter's Motion for Removal is timely under 28 U.S.C. §1446(b). For its removal New Chapter argues that the case should properly be understood as a class action pursuant to Rule 23 of CAFA.  Defendant also argues that the case may be removed because the

---

[1] *See* Complaint., Second ¶ 10-32
[2] *Id.* at Prayer for Relief

3

requirements for traditional diversity and CAFA jurisdiction are met. Defendant additionally alleges a federal question is implicated. All Defendant's arguments are incorrect, and Defendant's removal should be denied and the case should be remanded.

## III. ARGUMENT

### 1.   CLP's D.C. CPPA Suit is Not A Class Action Law Suit; Thus, CAFA Does Not Apply

CLP has not filed a class action suit under Rule 23 of the Federal Rules of Civil Procedure; thus, the case is not a class action under Rule 23, nor are the jurisdictional requirements of Rule 23 applied. New Chapter also incorrectly contends that this Court has original jurisdiction over CLP's suit under CAFA because the suit is "a matter that appears to be a class action all but in name." New Chapter further argues this matter is a class action as it was filed under Rule 23 of the Federal Rules of Civil Procedure or a similar state statute or rule of judicial procedure authorizing an action to be brought by one or more representative persons as a class action under 28 U.S.C. § 1332(d)(1)(B). To be clear, CLP filed the above cited action under the D.C. CPPA on behalf of the "general public" and a concerned class of consumers, and not under 28 U.S.C. § 1332(d)(1)(B).

New Chapter would like this Court to treat CLP's claim as a totally different form, and transform its filing into a class action suit under CAFA to suit Defendant's jurisdictional preference. Unlike the D.C. CPPA, CAFA confers federal diversity jurisdiction over class actions where the aggregate amount in controversy exceeds $5 million.[3] According to New Chapter,[4] CLP's claim meets CAFA's three requirements for removal:

---

[3] *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 571 (2005).
[4] *See* Notice of Removal at ¶18-25

(a) Combined alleged claim of more than $5,000,000, §1332(d)(6); (b) more than 100 alleged class members in the proposed class, §1332(d)(5)(B); and (c) diversity of citizenship, §1332(d)(2)(A).

New Chapter is misguided in its argument given that CAFA does not apply to this case. Defendant asserts the incorrect presumption when citing "CAFA's "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").[5] Defendant puts the cart before the horse and assumes the matter is a class action in order to acquire the beneficial presumption. Contrary to Defendant's assertions, given the affirmative pleadings of Plaintiff, at the remand stage the dispositive question is "[h]ow the action was actually filed," and Plaintiff's suit is not filed as a class action under Rule 23.[6] Again, this action was filed under the D.C. CPPA.

To counter the fact that there is no question this lawsuit was not filed under CAFA, Defendant attempts to argue that the definition of class action should be broadened to suit their overall jurisdictional goal. Defendant argues its application should not be confined solely to lawsuits that are labeled 'class actions.' Generally speaking, lawsuits that resemble a purported class action should be considered class actions for the purpose of applying [CAFA]." S. Rep. No. 109–14, at 35 (2005).[7] Simply because the words of the D.C. CPPA contain the words "class of consumer" cannot be used to justify the transformation of a matter filed under a state statute by the Plaintiff into a class action lawsuit, conferring federal jurisdiction. To address the allegation, one need look no farther than the plain language of the statute itself. The D.C. CPPA§ (k)(1)(D) allows a public interest organization to bring any action that a consumer could bring under

---

[5] Defendant's Notice of Removal at ¶9, *Citing* S. Rep. No. 109–14, at 43 (2005)
[6] *See Zuckman,* 958 F.Supp.2d at 305 (D.D.C. 2013).
[7] Notice of Removal at ¶9

(k)(1)(A), so long as the organization has a sufficient nexus to the consumer's interests to represent those interests adequately.  Accordingly, (k)(1)(D) allows public-interest organizations, like CLP, with a nexus to consumer interests to bring an action for relief when untruth enters the marketplace to consumer detriment.  Most notably, the statute itself specifically declines to be read as conferring federal jurisdiction, in 28-3905(k)(2), the plain language of the statute itself reads  "Any claim under this chapter *shall be* brought in the Superior Court of the District of Columbia…"  The use of the word "shall" as opposed to the more subjective "may" confers jurisdictional preference of the statute as well as the individuals who seek redress under its guise.

Thus, the plain language of the D.C. CPPA does not authorize a class action.  It does not certify a class, nor make any reference to the standards required under Federal Rule 23.

Even more decisive, this Court has previously held in *Breakman v. AOL L.L.C.,* 545 F.Supp2d 96 (D.D.C. 2008), that "CAFA does not establish an alternative basis for federal jurisdiction because the representative action under the D.C. Consumer Procedures Protection Act is authorized by the D.C. statute and is a separate and distinct procedural vehicle from a class action."  In fact, courts addressing this very issue, have, in accordance with the statutory intent, uniformly found that representative suits and class actions are separate and distinct procedural vehicles under the D.C. CPPA.[8] Plaintiff's position is consistent with the Courts findings in *Breakman* and *Zuckman v. Monster Beverage Corp.,* 958 F.Supp2d 293, 301 (D.D.C 2013), that found removal was not permitted under CAFA's class action provision for actions brought by a private attorney general under D.C. Code §28-3905(k)(l), where Plaintiff has not brought a "class

---

[8] *National Consumer League v. General Mills, Inc*., 680 F. Supp.2d 132, 137 ("the plain language of the CPPA expressly authorizes suits like NCL's that are brought on behalf of the general public without imposing any requirement that the suit meet the strictures of Rule 23"); Breakman v. AOL LLC, 545 F. Supp.2d 96, 101 (D.D.C. 2008) ("The CPPA specifically authorizes a private attorney general suit without any reference to class action requirements. *See* D.C. Code §28-3905(k)).

action" under the D.C. Superior Court Rule 23.  Accordingly, CLP filed an action under the D.C.

CPPA and not under 28 U.S.C. §1332(d)(1)(B).

Thus, CAFA's removal requirements are irrelevant because Plaintiff brings under a District

of Columbia consumer protection statute, which, as cited by both *Breakman*, *Zuckman*, and *Animal*

*League Def. Fund v. Hormel Foods Corp,* 249 F. Supp 3d 53, 64 (D.D.C. 2017), is a "separate and

distinct procedural vehicle from a class action." Therefore, Plaintiff's Complaint pleads no class

action which would trigger an analysis of jurisdiction under CAFA and cannot confer jurisdiction

on this Court.

### 2.   Defendant's Argument Fails Under Applicable Case Law

### a.   The ruling in *Rotunda v. Marriott International, Inc.* is limited and does not apply to this matter.

To support its contention that CLP's suit is removable as a class action, New Chapter

incorrectly argues that CLP's D.C. CPPA claim must be litigated as a class action under case law

precedent.  New Chapter relies on the Court's opinion in *Rotunda v. Marriott International, Inc.*[9]

However, this case is limited and distinguishable.  The concerns in *Rotunda* dealt specifically with

an action for only damages.  The courts have repeatedly held that seeking injunctive relief on

behalf of the general public does not implicate the class action framework.[10]

Even the Court in Rotunda recognizes, the CPPA "permits" representative actions on

behalf of consumers, broadly defined as the general public."[11] Under the D.C. Code § 28- 20

3905(k)(1)(C), a "nonprofit organization may" proceed "on behalf of the general public." Further, under

---

[9] *Rotunda v. Marriott International Inc.,* 123 A.3d 980 (D.C. 2015). The *Rotunda* Court determined that an action for damages under the D.C. CPPA on behalf of the general public must comply with Superior Court Rule of Civil Procedure 23 and be certified as a class action. This decision was based on fears that, without Rule 23 protections, claims for money damages on behalf of the general public under the D.C. CPPA could preclude the rights of members of the public who might later want to assert their own damages claims.
[10] *See Breakman, Zuckman, Animal League Defense Fund supra.*
[11] *Rotunda v. Marriott Int'l, Inc.,* 123 A.3d 980, 984 (D.C. 2015)

§ 28-3905(k)(1)(D)(i), "a public interest organization may, on behalf of the interests of a consumer or a class of consumers," e.g. the general public, "bring an action seeking relief if the consumer or class could bring an action." The purpose of these provisions is to allow organizations to act as "private attorneys" to promote the purpose of the statute and protect the public "where it is not feasible for the affected consumers" to be in the action. *See Smith v. Abbott Labs., Inc*., 2017 WL 3670194, at 1 (D.D.C. Mar. 31, 2017).

Plaintiff's requested monetary remedies do not unquestionably establish jurisdiction under CAFA. This case does not concern a purely monetary gain, as outlined in Plaintiff's requests for relief also include: "[a]n Order enjoining [New Chapter's] conduct found to be in violation of the CPPA" and "a[n] Order requiring [New Chapter] to provide corrective advertising to the residents of the District of Columbia that restores consumers." Plaintiff's Payer for Relief *Supra.*

### b. Organizations, such as non-profits, seeking injunctive relief on behalf of the general public do not need to join the public via class action.

Thus, consistent with the above analysis, courts have repeatedly concluded organizations seeking injunctive relief on behalf of the general public do not need to do so by "joining" the public to the case via class action. The very words of the *Rotunda* court support its limitations. *Rotunda* explains that CPPA plaintiffs must use the class action "framework" *only in* "suits for damages" so as to protect consumers' rights to recovery. *Rotunda* at 955-98 (emphasis added). Thus, the concerns of *Rotunda* do not apply to injunctive actions such as this one and courts have consistently rejected repeated efforts to expand *Rotunda* to suits requiring injunctive relief. This Court should, and under the law of the case is bound to, reach the same result. *Rotunda's* intent and concerns are not present in this case given that this suit does not preclude the rights of members of the public who might later want to assert their own damages because Plaintiff seeks injunctive relief under the CPPA, thus not conferring jurisdiction under CAFA.

For example, this case is similar to the facts in *Animal League Defense Fund v. Hormel Foods Corporation,* in which the defendant argued that the concerns that motivated the Court of Appeals in *Rotunda* were similarly applicable to suits involving injunctive relief requests; thus, arguing the Court should extend the *Rotunda* decision to such suits on that basis.[12] However, the Court in *Animal League Defense Fund*, stated that the defendant's argument was irrelevant given that the Court in *Rotunda* did not require that D.C. CPPA suits for injunctive relief be considered class actions that must comply with Rule 23.[13] Thus, New Chapter's identical argument is also irrelevant and incorrect, and this suit for injunctive relief should not be considered a class action and does not need to comply with Rule 23 or trigger the corresponding analysis.

   c.   **This case is akin to the decisions in *Breakman* and *Zuckman*, and should not be distinguished.**

The Defendant has also attempted to distinguish *Breakman* and *Zuckman.* Defendant argues that under the D.C. Code § 28–3905(k)(1)(D), a public interest organization is only permitted to bring a D.C. CPPA action on behalf of the interests of a consumer or class of consumers. This argument, similar to Defendant's other arguments, has already been addressed in *National Consumer League v. Flowers Bakeries LLC,* 2014 WL 1372642 (D.D.C. April 8, 2014), in which the Court was guided by the principal that the removal statute should be construed narrowly in favor of remand, addressed this very argument and disagreed with Defendant's analysis. CLP's Complaint expressly relies on multiple private attorney general standing provisions, not just subsection (D), the fact that Plaintiff also relied on subsection (C) should be ignored. At the remand stage the dispositive question is how the action was actually filed. Thus, the Court must consider all the standing provisions cited by Plaintiff.

---

[12] *F*. Supp. 3d, 2017 WL 1283411 (D.D.C. Apr. 5, 2017).
[13] *Animal League Defense Fund* at 64.

**d.   This matter does not have the hallmarks of a class action and should not be treated as such.**

Additionally, arguendo, even if the Court were to find that Plaintiff's Complaint was one brought solely pursuant to subsection (D), it would not follow that the statute's use of the term "class" would automatically permit removal under CAFA's class action provision. CAFA defines a "class action" as any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar state statute or rule of juridical procedure authorizing an action to be brought by 1 or more representative persons as a class action.  Defendant mistakenly suggests that an action filed under D.C. Code 28–3905(k)(1)(D) constitutes a suit "filed under" a state statute or rule of judicial procedure 'similar' to Rule 23 that authorizes a class action.  The Court in *National Consumer League*, held that absent the hallmarks of Rule 23 class actions; namely adequacy of representation, numerosity, commonality, typicality, or the requirement of class certification, courts have held that private attorney general statutes lack the equivalency to Rule 23 that CAFA demands.[14]  Thus, the same must be true of Code § 28–3905(k)(1)(D).  The *National Consumer League* Court saw no reason to depart from the well-reasoned conclusions in *Breakman* and *Zuckman* that removal is not permitted under CAFA's class action provision for actions brought by a private attorney general under D.C. Code § 28–3905(k)(1), where plaintiffs had not brought a "class action" under D.C. Superior Court Rule 23." *Id* at 36.

**e.   CAFA carves out an exception for cases akin to this matter.**

However, even if CAFA did apply, CAFA carves out an exception for private attorney general suits akin to CLP's.[15]  CAFA provides (in relevant part):

---

[14] *Nat'l Consumers League v. Flowers Bakeries, LLC*, 36 F. Supp. 3d 26, 36 (D.D.C. 2014) *citing Baumann*, 2014 U.S. App. LEXIS 4777, 2014 WL 983587, at *4 (quoting *Purdue Pharma*, 704 F.3d at 216-17); *see also W. Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 175-76 (4th Cir. 2011).
[15] *Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 101 (D.D.C. 2008).

A "mass action" that meets certain requirements shall be deemed to be a removeable class action, but "the term 'mass action' shall not include any civil action in which…all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such an action."[16]

Again, CLP's suit falls squarely under this exception as it is a civil action in which the sole claim asserted is under a D.C. code provision that specifically authorizes such an action. Further, the claim is asserted by a non-profit public interest organization on behalf of the general public and the interests of the consumers for which it substantiates a nexus. As such, it is not a mass action removable under CAFA. The plain language of the D.C. CPPA expressly authorizes suits akin to CLP's that are brought on behalf of the general public without imposing any requirement that the suit meet the structures of Rule 23.[17] Plaintiff's suit is similar to and should be analyzed in accordance with, *Breakman, Zuckman, Animal League Defense Fund,* and *National Consumer League,* which were presented with similar motions to remand a CPPA suit to Superior Court. As in keeping with the caselaw precedent, Plaintiff did not attempt to comply with Superior Court Rule 23, has not sought to bring a class action, and is not bringing suit either "in his individual capacity or as a class representative in a class action," as noted above, the Court held that "this representative action authorized by a District of Columbia statute and is a separate and distinct procedural vehicle from a class action."[18] Likewise, this case is separate and distinct from a class action, and should be treated as such to allow misplaced federal jurisdiction.

---

[16] 28 U.S.C. §1332(11)(B)(ii)(3).
[17] See D.C. Code § 28-3095(k).
[18] *Breakman,* 545 F. Supp. 2d at 101

### 3.  Defendant's Argument Fails Under Statutory History and Intent

**a.   The plain language of the D.C. CPPA supports the conclusion this matter should not be treated as a class action.**

In addition to the above-mentioned case law, the plain language of the CPPA, the plain language of the Complaint, and the legislative history of the CPPA, support the above conclusion. In 2000, the D.C. CPPA was amended to provide for representative suits and the particularized remedies related to representative actions.  Thus, the changes to the D.C. CPPA enabled public interest organizations and individuals to seek remedies for illegal trade practices without forming class actions.[19]  The rationale for the expansion of the private right of action was to "[p]rovide public interest organizations and individuals additional abilities to take consumer protection actions in the public interest to stop fraudulent conduct when an unlawful trade practice comes to their attention…" because, prior to the amendment, it was "…not possible to bring a consumer action to stop illegal conduct until after a victim suffers injury."[20]  The D.C. CPPA Amendments in the 2000 legislation included a strong statement of legislative intent: "D.C. Code 28-390l(c): This chapter shall be construed and applied liberally to promote its purpose."[21]

**b.  The legislative history of the D.C. CPPA supports the conclusion this matter should not be treated as a class action.**

The 2000 Amendments to the D.C. CPPA specifically allow non-profit public interest organizations and the private bar (including non-profit public interest organizations akin to CLP and other entities) to sue "on behalf of themselves of the general public" when the act had been violated.[22]  Additionally, and in line with the case law cited above, the amendments emphasize

---

[19] *See* D.C. Bar, Section on Antitrust, Trade Regulation & Consumer Affairs, Consumer Protection in the District of Columbia Following the Suspension of DCRA Enforcement of the Consumer Protection Procedures Act (April 1999) (appended to Letter from Mara Verheyden-Hilliard, Section Co-Chair, to the Council (March 29, 2000). JP A 217).
[20] D.C. Council, Comm. on Consumer & Regulatory Affairs, Report on Bill 13-679, Fiscal Year 2001 Budget Support Act of 2000 (Apr. 26, 2000) (Section 3: Consumer Protection, Rationale).
[21] *Grayson,* 15 A3d at 242.
[22] D.C. Code §§28-3901(a)(l) and 3905(k)(1)

that representative suits and class action suits are separate and distinct.  Notably, the provision governing remedies, located in § 28-3905(k)(2) reads: **Any claim** under this chapter shall be brought in the Superior Court of the District of Columbia and may recover the following remedies: (A) Treble damages or $1,500 per violation, whichever is greater, payable to the consumer.   As the court has previously ruled, "The phrase 'any claim may recover or obtain the following remedies' at the beginning of § 3905 (k)(2) indicates that the remedies listed are available to all litigants.

Nothing in the above-quoted language of the Statute nor in its legislative history suggests any procedural burden on the reach or remedy of representative actions as alluded to by Defendant. To the contrary, the Statute mandates its "liberal" application, supporting Plaintiff's assertion this suit should not be treated as a class action.  Legislative commentary regarding the amendments makes clear that the amendments are intended to reinforce an expansive reach of the CPPA "[b]y being more explicit about what kinds of suits the Council intends to authorize."[23]

In accordance with the caselaw precedent and plain statutory language and intent, given CLP has brought suit under the D.C. CPPA §28-3901 *et seq.,* this suit should not be treated as a class action, and CAFA's jurisdiction should not be implicated or applicable.  Therefore, this matter should be remanded back to the jurisdiction of the D.C. Superior Court.

### 4.   The Court Does Not Have Diversity Jurisdiction Over this Matter

**a.   The amount in controversy does not exceed $75,000.**

Defendant also contends, in the alternative, should the Court not decide to treat this matter under CAFA jurisdiction, that this Court has diversity jurisdiction over this action because parties are of diverse citizenship and the amount in controversy exceeds $75,000.[24]  Plaintiff does not

---

[23] Alexander Report at JP A 762.
[24] Plaintiff's Complaint at ¶Footnote 1

dispute that the parties are diverse but contends that Defendant has not demonstrated an amount in controversy exceeding $75,000. [25]

Defendant argues that the amount-in-controversy requirement is satisfied based on the potential costs Defendant may incur in complying with the requested injunctive relief, attorneys' fees, and punitive damages.  None of these items, even taken collectively, are sufficient to establish an amount in controversy exceeding $75,000.

Notably, Plaintiff has affirmatively claimed that the amount in controversy does not exceed $75,000.[26]  Even though this matter is clearly not a class action, if that analysis were used, the non-aggregation principle would be applicable and New Chapter's analysis would fail.[27]  Even under a class action analysis, "The separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement."[28]

In *National Consumer League v. Flowers Bakeries LLC,* 2014 WL 11372642 (D.D.C April 8, 2014), the Court was guided by the principle that the removal statute should be construed narrowly in favor of remand and that separate and distinct claims should not be aggregated.  On these bases, the Court concluded that the jurisdictional amount in controversy had not been satisfied. This principle can conflict with the cost-to-defendant test because Defendant's compliance with an injunction may resolve the separate and distinct claims of many individuals. In such a case, considering the total cost of that compliance would, in essence, "aggregate" the value of all of those claims. The Court of Appeals has recognized this "possible conflict" between the non-aggregation principle and "the rule which allows the jurisdictional amount to be based on

---

[25] 28 U.S.C. §1332(a)(1).
[26] Plaintiff's Complaint at footnote 15 (p. 8)
[27] *See Zahn v. Int'l Paper Co*., 414 U.S. 291, 294 (1973).
[28] *Snyder v. Harris*, 394 U.S. 332, 335 (1969); s*ee also* Zahn v. Int'l Paper Co., 414 U.S. 291, 294 (1973) ("multiple plaintiffs with separate and distinct claims must each satisfy the jurisdictional-amount requirement for suit).

the cost to the defendant of proposed relief," but has "not attempt[ed] to resolve" it. *Fenster v. Schneider*, 636 F.2d 765, 767 n.1 (D.C. Cir. 1980).

Additionally, several district court opinions from this Circuit that have considered this conflict in the context of cases brought under the D.C. CPPA on behalf of organizational plaintiffs seeking injunctive relief and have determined that considering the total cost to the Defendant of complying with that relief would violate the non-aggregation principle. These courts have instead found that the cost of compliance that a court should consider when determining the amount in controversy is the total amount divided among the beneficiaries of the injunction.[29]

### 5. <u>The Non-Aggregation Principal Should Be Applied To This Matter</u>

This Court has considered similar conflicts in several of its published opinions involving the D.C. CPPA on behalf of the general public seeking injunctive relief; and having determined that considering the total cost to the Defendant of complying with that relief would violate the non-aggregation principle.  These courts have instead found that the cost of compliance that a court should consider when determining the amount-in-controversy is the total amount divided among the beneficiaries of the injunction.[30] Which, according to Defendant's own data, over 50,000 of

---

[29] *See, Breath D.C. v. Santa Fe Natural Tobacco Co.,* 232 F.Supp.3d 163 at 171, 2017 WL 521513, at 6 (in a DCCPPA case seeking injunctive relief, holding that "to determine the amount in controversy from the defendants' perspective, the cost of compliance must be divided among the beneficiaries of the injunction" because considering "their total compliance costs in calculating the amount in controversy would circumvent the non-aggregation principle"); *Witte v. Gen. Nutrition Corp.* , 104 F.Supp.3d 1, 6 (D.D.C. 2015) ("Defendants' argument—that this Court should consider their total compliance costs in calculating the amount in controversy—would circumvent the non-aggregation principle articulated in Snyder and Zahn *."); Breakman v. AOL LLC* , 545 F.Supp.2d 96, 105 (D.D.C. 2008) (finding that "the cost-to-defendant test is inapplicable to the current diversity action" where plaintiff sought injunctive relief under the DCCPPA because it " 'would undermine the holdings of Zahn and Snyder .' ") (quoting *Nat'l Org. for Women v. Mut. of Omaha Ins. Co.* , 612 F.Supp. 100, 108 (D.D.C. 1985) ).

[30] See *Witte v. Gen. Nutrition Corp.*, 104 F. Supp. 3d 1, 6 (D.D.C. 2015) ("Defendants' argument—that this Court should consider their total compliance costs in calculating the amount in controversy—would circumvent the non-aggregation principle articulated in Snyder and Zahn."); *Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 105 (D.D.C. 2008) (finding that "the cost-to-defendant test is inapplicable to the current diversity action" where plaintiff sought injunctive relief under the case).

the units of Product have been sold, even a low estimation of pro rata relief would be well below the threshold.

Additionally, and in line with rulings in *Breath D.C., Witt v. Gen Nutrition Corp.*, and *Breakman*, applying the non-aggregation principal is consistent with "the longstanding directive that federal jurisdiction should be strictly interpreted."[31]  Even more direct, in *National Consumer League v. General Mills Inc.*, the Court again affirmed the D.C. CPPA provides that damages in a private attorney general action (including one on behalf of a non-profit or public interest organization) are "payable to the consumer," and thus, aggregation is not proper.[32]

### a.   The non-aggregation principal applies to punitive damages as well as attorney's fees.

Lastly, Defendant argues that Plaintiff's requested attorney's fees and punitive damages exceeds the amount-in-controversy. Again, there is a considerable amount of support in a number of district court opinions from this Circuit that previously address the matter, and have all consistently ruled that the non-aggregation principal would apply to attorney's fees. Additionally, the Court in *Breakman* noted that it "[i]s not entirely comfortable with the premise that an action should be retained in federal court where satisfaction of the amount-in-controversy requirement depends upon a lump sum aware of 17 attorneys' fees, given its duty to "strictly construe the scope of its removal jurisdiction."[33]  Notably, Defendant has also failed to provide any substantiated number or model by which the bald estimate of attorneys fees would be calculated.

---

[31] *Breakman*, 545 F. Supp. 2d at 105.
[32] D.C. Code § 28-3905(k)(1)(A).
[33] *Breakman, supra* at 25

**b. Even if analyzed under CAFA jurisdictional requirements; Defendant cannot meet the amount in controversy.**

This Case does not satisfy CAFA's Remaining Requirements because the amount in controversy is not over $5 million.  By making this argument, Plaintiff does not concede this matter is a class action, akin to a class action, or an action filed under a similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action statute CAFA.  However, even arguendo, CAFA jurisdiction is absent here as Defendant has not carried its burden of demonstrating that $5 million is in controversy.

The amount in controversy requirement of CAFA is not affected by the non-aggregation principle discussed above because the CAFA statute expressly allows for aggregation. 28 U.S.C. § 1332(d)(6) ("the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs"). That being said, Plaintiff disputes Defendant's calculation they would exceed $5 million.

The burden of establishing CAFA jurisdiction is on the party claiming jurisdiction. *See, Strawn v. AT & T Mobility*, 530 F.3d 293, 298 (4th Cir. 2008). It is also true that a defendant may, in some cases, rely on an estimate of the potential damages from the allegations in the complaint in order to meet its burden to establish the CAFA's amount in controversy requirement when those claims have not been disclaimed by Plaintiff.  However, it remains the defendant's burden to show that damages are, in fact, more than $5 million "to a legal certainty," when a plaintiff, as here, has dis-claimed damages less than the amount in controversy. Plaintiff's Complaint, not only affirmatively pleads damages less than $5 million dollars, it disclaims damages greater than $75,000.[34]

---

[34] Plaintiff's Complaint at footnote 15.

In *Lowdermilk v. United States Bank National Assoc.*, 479 F.3d 994 (9th Cir. 2007), the plaintiffs pleaded in the state-court complaint that she sought damages "in total, less than five million dollars." *Id.* at 997. The defendant removed, and the district court ordered remand. On appeal, the Ninth Circuit affirmed, holding that because the plaintiff had disclaimed damages above a fixed amount, the defendant was required to establish that the amount in controversy exceeded $5 million to a "legal certainty," which meant that the "defendant must not only contradict the plaintiff's own assessment of damages, but must overcome the presumption against federal jurisdiction." *Id.* at 999. The defendant failed to meet this burden despite the fact that it had "examined company records" of thousands of employees, engaged in sophisticated calculations, and submitted a declaration setting forth both the calculation and the assumptions that were behind it. *Id.* at 1000–1001 (describing calculations and assumptions).

Thus, Defendant's assertion that "[A]s specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" Defendant's Notice of Removal at p. 7.[35]  It follows that the supporting statements of Defendant such as "On information and belief, New Chapter estimates that the cost of a corrective marketing campaign for the Prenatal Vitamins would exceed the statutory amount in controversy threshold" will not suffice to establish "a legal certainty." Defendant's Notice of Removal p. 8.

Again at p. 9, Defendant asserts a broad sweeping statement as basis for the amount in controversy, "On information and belief, New Chapter estimates it would cost more than approximately $75,000 to recall the Prenatal Vitamin products in the District of Columbia and

---

[35] *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014);

more than $150,000 to reformulate the Prenatal Vitamins." As to attorney's fees, Defendant's statements again remain far too vague, as they argue it "[i]s reasonably likely to exceed CAFA's amount in controversy requirement. *Id* at p. 10.

Thus, Defendant by its own argument has failed to establish, even by a preponderance of the evidence, but most certainly by a "legal certainty" that the amount in controversy would exceed $5 million, as Plaintiff's have affirmatively disclaimed damages over $75,000.

### 6. There Is No Federal Question Jurisdiction

#### a. Plaintiff's claims stem from a state law that merely uses federal standards as one of many factors that help determine liability.

Plaintiff agrees with Defendant that "'[w]hether a case 'arises under' federal law for purposes of § 1331' depends on the well-pleaded allegations in the Complaint." Defendant's Motion for Removal, p.11, *quoting Holmes Grp., Inc. v. Vornado Air Circulations Sys.*, 535 U.S. 826, 830 (2002). Plaintiff also agrees that "[a] complaint raises a substantial question of federal law warranting removal if 'the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law....'" Defendant's Motion of Removal, p.12, *quoting Empire Healthchoice Assurance Inc. v. McVeigh*, 547 U.S. 677, 690 (2006). However, Plaintiff's allegations in the Complaint do not present a case that 'arises under' federal law given that Plaintiff's "right to relief..." does not depend "...on resolution of a substantial question of federal law" because Plaintiff's claims stem from a state law that merely uses federal standards as one of many factors that help determine liability. Thus, removal is improper.

This case does not turn on the federal issue of whether Defendant's Products contain contaminants that exceed the allowable levels determined by federal agencies. In fact, the determination that Defendant's Products did not or do not exceed such levels would not be dispositive of the fact that Defendant did not engage in false and misleading advertising if the court

finds that other factors weigh in Plaintiff's favor. For example, even if the Court determined that Defendant's Products contain levels of contaminants that do not exceed federal standards, the Court could still hold that Defendant is in violation of the state statute if it discovers that the advertisements would lead the consumer to believe that the Products contain no traces of the contaminants in question or much lower levels given that Defendant's competitors' products contain levels that are much lower than those of Defendant's Products. Thus, given that the outcome of this case is not dependent on a substantial federal question of law, removal is improper.

Plaintiff also agrees that *Merrell Dow Pharmaceuticals*, *Inc.* applies here. The court in *Thompson v. Merrell Dow Pharmaceuticals, Inc*. held that when a federal statute is simply "one available criterion for determining…" liability, "the plaintiffs' causes of action did not depend necessarily upon a question of federal law." 766 F.2d 1005, 1006 (1985) "Consequently, the causes of action did not arise under federal law and, therefore, were improperly removed to federal court." *Id.* The same is the case here given that the federal regulations in question are simply one available factor the Court can take into consideration in determining the degree to which Defendant has engaged in deceptive and misleading marketing practices. Thus, the causes of action did not arise under federal law and was improperly removed to federal court.

**b.   The factors of *Gunn v. Minton* are not satisfied.**

The Court in *Gunn v. Minton* held that, as quoted by Defendant, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." 568 U.S. 251, 258 (2013). Further, "all four of these requirements…" need to be met for jurisdiction to be proper. *Id.* Here, as articulated above, the first factor is not met given that the federal regulations in question are simply one available factor

the Court can take into consideration in determining the degree to which Defendant has engaged in deceptive and misleading marketing practices. *Supra.* In *Grable & Sons Metal Prods. v. Darue Eng'g & fg.*, the court held that a federal issue is "actually disputed" when the "meaning of the federal statute [is] actually in dispute." 545 U.S. 308, 315 (U.S. 2005). Here, Defendant does not dispute the meaning of any federal regulations mentioned in support of Plaintiff's claim that Defendant has engaged in deceptive and misleading marketing practices. In fact, Defendant and Plaintiff are in agreement that the "FDA establishes when a vitamin product shall be deemed adulterated." Defendant's Motion for Removal p. 11.

Defendant claims that a dispute over "what standards federal law and federal agencies establish" satisfies the second factor, but it does not, given that 1) Defendant does not assert that a specific federal law should be relied upon in this case, and 2) does not assert that the meaning of a federal law will be disputed.  Defendant's Motion for Removal, p.14. Rather, Defendant has made overly broad statements with respect to allegedly relevant federal laws, without claiming that a specific statute's standards will be in dispute; thus, there is no dispute over the meaning of a federal statute because there is no federal standard to begin with.  Given that Defendant has not shown that the meaning of a federal statute is actually in dispute, the second factor has not been met, and Defendant's Motion for Removal fails.

Plaintiff's Complaint does not turn on a substantial federal issue. For example, unlike in *Franchise Board*, where the court acknowledged that alleged patent infringers have a "clear interest is swift resolution of the federal issue of patent validity," Plaintiff does not have a clear interest in the swift resolution of the federal issue of whether a Product's chemical levels exceed those set by federal agencies. *Id*. Rather, the issue in this case is a state issue of whether Defendant engaged in misleading advertising, not whether Defendant violated a federal statute or regulation.

Instead, whether Defendant's Products contain[ed] contaminants at levels that exceeded those set forth by federal agencies is merely one of many factors taken into consideration in determining a state question of law. See Franchise Board. No substantial question of federal law is in dispute between the parties here. Defendant has not disputed the validity of the standards and law mentioned in Plaintiff's Complaint; nor has Defendant argued that such federal standards do not apply to this case. In contrast, Defendant appears to agree that such federal standards are both valid and apply to this case and is merely questioning whether such standards prove or disprove that Defendant has violated state law. Thus, the third factor is not met, Defendant's claim fails, and removal is improper.

Finally, Defendant fails to satisfy the fourth factor given that, and removal would disrupt Congress's federal-state balance given that none of Plaintiff's claims come within the scope of a federal cause of action. *See Franchise Board* at 440. In addition, the federal laws and/or regulations that Plaintiff brings to the Court's attention in its Complaint, "neither creates nor expressly denies any cause of action in favor of state governments… It does not purport to reach every question relating to…" chemicals and toxicants covered by federal regulations. *See Franchise Board* p. 440-441. Thus, it is clear that a suit under a state statute like [insert state law] that addresses [insert purpose of state law] does not "arise under" a federal agency' regulations of toxicants and chemicals. Thus, it is abundantly clear that [insert state law] is not a "creature" of the federal regulations brought forth by Defendant and does not "turn on a question of federal law." *Id.* at 442. Given the above, it follows that Defendant fails to satisfy the fourth factor.

Even if Defendant failed to satisfy one of the four requirements set forth in *Gunn,* Defendant's claim fails, and the court has no federal question jurisdiction, and removal is improper. Here, as

shown above, Defendant has failed to demonstrate that any of the four factors have been satisfied. Thus, removal is improper, and Plaintiff's Motion to Remand should be granted.

## IV.   CONCLUSION

Defendant have impermissibly removed this case from D.C. Superior Court.  This Court has already decided this very issue in a series of previous cases.  There is no class action pleaded before the Court within the scope of CAFA nor within the applicable laws of federal jurisdiction. Defendant asks the Court to rule contrary to its own case law and accept impermissible damages calculation in order to meet the jurisdiction damages threshold for diversity jurisdiction.

Further, Defendant also fails to establish the amount in controversy under CAFA jurisdiction, as Plaintiff has affirmatively disclaimed an amount over $75,000, and Defendant has provided no evidence to the contrary to a legal certainty. Thus, whether analyzed under CAFA or questions of diversity jurisdiction, this Court simply does not have subject matter jurisdiction over this case. Finally, Plaintiff has not raised nor implicated a federal question. Plaintiff's claims stem from a state law that merely uses federal standards as one of many factors that help determine liability, and thus, the factors in *Gunn v. Minton* remain unsatisfied.

WHEREFORE, Plaintiff Clean Label Project respectfully requests that this action be remanded to the D.C. Superior Court.

Respectfully submitted,

Attorneys for Clean Label Project (CLP)


/s/ Travis Pittman
_____
Travis Pittman (D.C. Bar No. 1016894) Local
Counsel for Plaintiff
Holmes Pittman & Haraguchi, LLP
P.O. Box 380
Chester, MD  21619
Phone: (410) 482-9505
Fax: (443) 782-0362
jtpittman@hphattorneys.com


Kristen M. Ross, Esq.
Davitt, Lalley, Dey & McHale,
PC 1971 Beltline Ave., Suite 106
Grand Rapids, MI 49525
Tel: (202) 750-0355
kristen.ross@dldmlaw.com

Dated: <u>December 21, 2020</u>


**Certificate of Service**

I hereby certify that on this 21st day of December, I served the foregoing Plaintiff's Motion

to Remand to D.C. Superior Court on all parties via the Court's electronic case filing system.


/s/ Travis Pittman
_____
Travis Pittman

24